J-S58003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BILLY JOE RICHTER | : | |
| | : | |
| Appellant | : | No. 1713 WDA 2018 |

Appeal from the Judgment of Sentence Entered November 2, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003360-2016

BEFORE: PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:     **FILED JANUARY 03, 2020**

Billy Joe Richter appeals from the judgment of sentence entered on November 2, 2018, in the Court of Common Pleas of Allegheny County, following his conviction of one count each of murder in the first degree, robbery, and burglary; two counts each of assault of a law enforcement officer and aggravated assault; and five counts of recklessly endangering another person ("REAP").[1] On appeal, Richter claims the evidence was insufficient to sustain his conviction and the trial court erred in granting the Commonwealth's motion *in limine* to preclude him testifying about his mental health diagnosis and treatment. After review, we affirm.

_____

[1] 18 Pa.C.S.A. §§ 2501(a), 3701(a)(1), 3502(a), 2702.1(a), 2702(a)(2), and 2705, respectively.

J-S58003-19

We take the underlying facts and procedural history in this matter from the trial court's May 8, 2019 opinion and our review of the certified record.

At trial, Carol Basinger, [Richter's] cousin, testified that [he] came to visit her at her home in March of 2015. During the course of their conversation, [Richter] told Basinger that [he] wanted a gun for his upcoming birthday. Basinger testified that [Richter] said[,] "he was going to shoot his uncle and his other uncle was going to shoot him." She did not take [him] seriously. She further testified [ ] "he would say that the Good Lord told him to kill."

Allegheny County Police Detective Laurie McKeel testified that on May 20, 2015, she was asked to go to the 911 call center. Through her investigation she determined that Harrison Shaffer had made a 911 call.[a] She later determined that another individual who could be heard on that call was [Richter]. When she arrived at the call center, she listened to a recording of the beginning of the 911 call and then continued to listen to the open line.[b] Over the open line, she heard two voices. She was unsure if she heard gunshots because the television was playing in the background. She testified that she heard an individual say "It's God's will."

> [a] The Commonwealth admitted a recording of the 911 call and a transcript of the call was marked as an exhibit but not admitted. On the 911 call transcript, Shaffer says "A guy just broke in and knocked me down, and he's trying to steal my guns. Shaffer later says[,] "He's tearing my house up, getting them guns." Later, Shaffer says "Help me. He shot me."

> [b] An open line is a 911 call where the caller is not responding to the 911 operator but voices and/or activity can be heard on the line.

Forward Township Chief of Police Travis Stoffer responded to a burglary in progress call on May 20, 2015, at 505 Pine Avenue. As he proceeded to the address, he received updated information that the burglary was actually "a home invasion, but the caller knows the actor to be his nephew." Chief Stoffer testified he was further updated that dispatch believed they heard gunshots and they could no longer get the caller to respond. Upon arrival at 505 Pine, Chief Stoffer saw a gun come out of the front door and

- 2 -

then a man came out the front door and fired two rounds at him. He returned fire and took cover. Officer Aaron Davis arrived shortly thereafter. Chief Stoffer identified [Richter] as the person who fired two shots at him. Over the next three to four hours, police officers from neighboring jurisdictions arrived and established a perimeter while [Richter] periodically opened the front door, fired a shot or two, and retreated back into the residence. Chief Stoffer heard [Richter] state that he was going to shoot one of the officers between the eyes. The SWAT team arrived with an armor- plated vehicle to protect the officers who were under fire.

Glenn Fine, then a [Sergeant] with Forward Township Police Department, testified that he arrived at the scene shortly after Chief Stoffer. He said that he attempted to get to the victim, Harrison Shaffer, but was thwarted by shots fired at him and at other officers by Richter.

Aaron Davis, another former Forward Township Police Officer, testified [Richter] shot at him and at Chief Stoffer. During an exchange of gunfire, [Pennsylvania State] Trooper [Antonio] DeMarchi hit [Richter] with a round of ammunition and [Richter] retreated into the residence where he was not heard from for several minutes. Officer Davis heard [Richter] yell several times that he was not going back to prison and that he was going to shoot one of the officers between the eyes.

Lincoln Borough Chief Richard Bosco testified that, after [Richter] was shot, he and two other officers approached the residence in order to locate the victim and determine his status. As an officer pulled on the door, Chief Bosco testified that a shotgun blast hit the door and forced their retreat.

Trooper Antonio DeMarchi of the Pennsylvania State Police testified that he and three or four other troopers responded to the call and helped establish a perimeter around the house. From his vantage point, approximately 80 yards from the front of the house, he observed the scene through the magnified scope on his rifle. He observed a man come to the door holding a long gun across his waist. Trooper DeMarchi watched as the man "started to raise the rifle." The Trooper heard several other officers tell the man to drop the gun, but the man, later identified as [Richter], failed to do so. As [Richter] was shouldering the weapon, Trooper DeMarchi fired one shot which hit [him]. Shortly thereafter, the

Trooper heard a gunshot from inside the house and pellets hitting the trees to his right.

Lincoln Township Police Department [Sergeant] Jamie Evans testified that her hand was on the front door when someone fired a weapon from inside the residence. She stated that she believed it was the intent of the person who fired the weapon to shoot her and other uniformed officers and testified that she would have been hit if she had not taken evasive action.

Detective Todd Dolfi of the Allegheny County Police Department testified that, ultimately, he recovered a shotgun on the first floor of Shaffer's residence at the edge of the kitchen. The parties stipulated that the firearm was operable. Detective Dolfi also testified that he recovered nine spent shotgun shells inside the residence.

Stephanie Nickolas, a scientist from the Allegheny County Medical Examiner's Office, testified that blood was found on the shotgun recovered by Detective Dolfi at the crime scene. Ashley Platt, a scientist from at the Medical Examiner's Office, testified that the blood on the shotgun matched the DNA profile of [Richter]. Moreover, the victim, Harrison Shaffer, was specifically excluded as a match for the blood on the shotgun. The parties stipulated that Dr. Biayang Xu, a forensic pathologist from the Allegheny County Medical Examiner's Office, would have testified if called that: Shaffer died as a result of gunshot wounds to the head, neck and trunk of his body; the manner of death was homicide; based on his examination of the body, Shaffer was first shot in the stomach, then the neck, and finally the head; and the assailant moved closer to Shaffer as he fired each shot.

Trial Court Opinion, 5/08/19, at 3-6 (record citations omitted).

On November 1, 2018, the Commonwealth made an oral motion *in limine* to preclude Richter from testifying that, prior to trial, he received mental health treatment as an inpatient at Torrance State Hospital. *See* N.T. Trial, 11/01/18, at 254. Defense counsel did not oppose the motion *in limine*, specifically stating, "I have no intention of asking Mr. Richter anything

- 4 -

regarding mental illness." *Id.* The trial court explained to Richter that, when he testified, he could only answer questions asked by counsel and his mental health was not an issue in the case. *See id.* at 257. While defense counsel agreed Richter could not testify regarding his mental health problems, Richter objected saying, "I was there for specific treatment. It should be known. . . . I was not capable of my own actions, I believe." *Id.* at 257-58.

Richter took the stand in his own defense. He testified he was at a gas station when he fell asleep in his car and when he awoke he was in his uncle's house with a gun in his hands. *See id.* at 278-79. He maintained "the Lord" possessed him and "the Lord showed up again and put a hole in my back with a sword or something." *Id.* at 280-81. Richter claimed to have no memory of killing his uncle or the shoot-out with police and believed the police lied when they said Trooper DeMarchi shot him because, "I only got one [scar] on my shoulder blade where the Lord put the sword in." *Id.* at 284. On cross-examination, Richter continued to argue God drove his car to his uncle's residence and he had no memory of either shooting his uncle or shooting at the police. *See id.* at 289.

On November 2, 2018, a jury convicted Richter of murder in the first degree, robbery, burglary, two counts of aggravated assault, two counts of assault of a police officer, and five counts of REAP. The jury acquitted Richter on two counts of assault of a police officer and three counts of aggravated assault. The trial court immediately sentenced him to a term of life

imprisonment for murder in the first degree, followed by an aggregate consecutive term of 70 to 140 months' imprisonment for assault on a law enforcement officer. The instant, timely appeal followed.[2]

In his first issue on appeal, Richter contends the evidence was insufficient to sustain his convictions because the Commonwealth failed to prove conscious intent beyond a reasonable doubt. Richter's Brief, at 21-34. Specifically, Richter claims the Commonwealth did not disprove his "uncontroverted testimony at trial . . . that he acted under the 'Lord's will,' [and] was unconscious for much of the events[.] . . ." *Id.* at 21. We disagree.

Our standard of review for a challenge to the sufficiency of the evidence is as follows:

> The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary. In assessing [a] sufficiency challenge, we must determine whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. . . . [T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

_____

[2] On December 3, 2018, the trial court ordered Richter to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court granted Richter an extension of time, and Richter filed a timely Rule 1925(b) statement on February 4, 2019. On May 8, 2019, the trial court issued an opinion.

*Commonwealth v. Edwards*, 177 A.3d 963, 969-970 (Pa. Super. 2018) (quotation marks and citations omitted).

Richter challenges the sufficiency of the evidence underlying each of his convictions. However, he views the evidence in the light most favorable to him, rather than the Commonwealth, the verdict winner, as required by our case law. *See Commonwealth v. Von Evans*, 163 A.3d 980, 983 (Pa. Super. 2017), *appeal denied*, 170 A.3d 1023 (Pa. 2017); Richter's Brief, at 21-34.

As Richter's first issue is actually a broad based challenge to each of his convictions, albeit on the same grounds at each issue, we will address each type of crime individually. First, we address his conviction for murder in the first degree.

"An individual commits first-degree murder when he intentionally kills another human being; an intentional killing is defined as a willful, deliberate and premeditated killing." *Commonwealth v. Williams*, 176 A.3d 298, 306 (Pa. Super. 2017) (internal quotation marks and citation omitted). "To sustain a conviction for first-degree murder, the Commonwealth must establish beyond a reasonable doubt that: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill." *Commonwealth v. Cash*, 137 A.3d 1262, 1269 (Pa. 2016) (citation omitted). "[T]he jury, as a factfinder, may infer that the accused intended to kill a victim based on the accused's

use of a deadly weapon on a vital part of the victim's body." ***Commonwealth v. Sanchez***, 36 A.3d 24, 37 (Pa. 2011) (citation omitted).

Richter argues the Commonwealth's evidence cannot establish the he acted with the specific intent to kill his uncle. Here, the evidence at trial demonstrated that, prior to the killing, Richter told his cousin he wanted a gun and would use it to shoot his uncle. N.T. Trial, 10/30/18, at 34-35. The evidence also showed he shot his uncle first in the stomach, then in the neck, then in the head, moving closer to him with each shot. N.T. Trial, 11/01/18, at 273. This evidence was easily sufficient for the jury to find Richter acted with specific intent to kill. ***See Commonwealth v. Baker***, 201 A.3d 791, 796 (Pa. Super. 2018) (evidence defendant sought to obtain gun and then shot victim twice sufficient to sustain conviction for murder in first degree), *appeal denied*, 215 A.3d 963 (Pa. 2019); ***see also Williams***, 176 A.2d at 307-08 (evidence sufficient to sustain conviction for murder in first degree where defendant possessed deadly weapon and shot victim in chest despite his claim that he had not intentionally aimed for vital part of body).

Richter next challenges his conviction for robbery. To sustain a conviction for robbery, as charged in this case, the Commonwealth must prove beyond a reasonable doubt that a person inflicted serious bodily injury upon another person in the course of committing a theft. ***See*** 18 Pa.C.S.A. 3701(a)(1)(i). "Serious bodily injury" is defined in the Crimes Code as "[b]odily injury which creates a substantial risk of death or which causes

serious, permanent disfigurement, or protracted loss or impairment of the function of a bodily member or organ." 18 Pa.C.S.A. § 2301.

Richter argues the Commonwealth's evidence was insufficient to establish that he intended to inflict serious bodily injury to his uncle. However, as discussed above, the Commonwealth presented sufficient evidence to show Richter intentionally killed his uncle. Murder easily satisfies the definition of serious bodily injury.

Additionally, the Commonwealth presented evidence through the victim's 911 call that Richter was in the process of stealing his guns. N.T. Trial 10/30/18 at 45, 52. The evidence showed Richter killed his uncle with the stolen gun. N.T. 10/31-11/01/18, at 151-52, 224-225, 233, 262, 273. Logically, the jury could infer from this evidence Richter, while committing the theft of the guns, shot and killed his uncle. *See Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa. Super. 2004) (providing jury is permitted to resolve any doubt as to defendant's guilt), *appeal denied*, 881 A.2d 819 (Pa. 2005). Richter's attack on the sufficiency of the evidence supporting his robbery conviction fails.

Richter also challenges the sufficiency of the evidence supporting his burglary conviction. We define burglary as follows:

> **(a) Offense defined.-**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
>
> (1)  (i) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for

- 9 -

> overnight accommodations in which at the time of the offense any person is present;
>
> (ii) enters a building or occupied structure, or separately secured or occupied portions thereof that is adapted for overnight accommodations in which at the time of the offense any person is present.

18 Pa.C.S.A. §§ 3502(a)(1)(i) and (ii).

The intent to commit a crime must be contemporaneous with entering the dwelling, and we determine intent by the totality of the surrounding circumstances. *See Commonwealth v. Magnum*, 654 A.2d 1146, 1147 (Pa. Super. 1995). "Often, intent cannot be proven directly but must be inferred from examination of the facts and circumstances of the case." *Commonwealth v. Willetts*, 419 A.2d 1280, 1281 (Pa. Super. 1980).

Under the totality of the circumstances, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude the evidence was sufficient to establish Richter had the specific intent to commit a crime upon entering the home. *See Magnum*, 654 A.2d at 1147. The record reveals Richter broke down the door with the intent to take his uncle's guns and shoot him. *See* N.T. Trial, 10/30/18, at 34-35; Transcript 911 Call from Harrison Shaffer, 5/20/15, at 2-3, 6. This evidence was sufficient to sustain Richter's conviction for burglary.

Lastly, Richter challenges his convictions for assault on a law enforcement officer, aggravated assault, and REAP. We define assault of a law enforcement officer, in pertinent part, as:

> A person commits a felony of the first degree who attempts to cause or intentionally or knowingly causes bodily injury to a law enforcement officer, while in the performance of duty and with knowledge that the victim is a law enforcement officer, by discharging a firearm.

18 Pa.C.S.A. § 2702.1.

This Court has previously concluded that, by its plain terms, Section 2702.1 requires the Commonwealth to prove the following elements: "(1) the defendant attempted to cause, or intentionally or knowingly caused, bodily injury, (2) the victim was a law enforcement officer acting in the performance of his duty, (3) the defendant had knowledge the victim was a law enforcement officer, and (4) in attempting to cause, or intentionally or knowingly causing such bodily injury, the defendant discharged a firearm." *Commonwealth v. Landis*, 48 A.3d 432, 445 (Pa. Super. 2012). Moreover, actual bodily injury is not necessary to sustain a conviction under Section 2702.1, where the Commonwealth sets forth evidence the defendant attempted to cause such bodily injury. *See id.* Criminal attempt under this section "requires a showing of some act, albeit not one actually causing bodily injury, accompanied by an intent to inflict bodily injury upon a law enforcement officer by discharging a firearm." *Id.* at 446.

The Commonwealth charged Richter with violating 18 Pa.C.S.A. §§ 2702(a)(1) and (2). Specifically, Section 2702 states, in relevant part:

> **a) Offense defined.--**A person is guilty of aggravated assault if he:

- 11 -

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;

18 Pa.C.S.A. §§ 2702(a)(1) and (2).

In the context of § 2702, attempt "is demonstrated by proving that the accused acted in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury upon another along with the intent to inflict serious bodily injury." **Commonwealth v. Gruf**, 822 A.2d 773, 776 (Pa. Super. 2003) (citation omitted). We can sustain a conviction for aggravated assault regardless of whether any serious bodily injury actually occurred. **See id.**

Additionally, when an assault takes place but the assailant does not inflict serious bodily injury, "the charge of aggravated assault can be supported only if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury." **Commonwealth v. Alexander**, 383 A.2d 887, 889 (Pa. 1978). The Commonwealth can prove intent through direct or circumstantial evidence. **See id.** We can consider whether the attacker was disproportionately larger or stronger than the victim; whether the attacker escalated the attack; **whether the attacker used a weapon to aid in his attack; and any statements made by the**

**attacker**. *See id.* (emphasis added); *see also Commonwealth v. Jackson*, 955 A.2d 441, 446 (Pa. Super. 2008).

Lastly, [a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. "[REAP] requires the creation of danger, so the Commonwealth must prove the existence of an actual present ability to inflict harm to another." *Commonwealth v. Shaw*, 203 A.3d 281, 284 (Pa. Super. 2019) (citation omitted), *appeal denied*, 215 A.3d 964 (Pa. 2019).

Here, the testimony at trial established Richter engaged in a standoff with police, shooting at them when they approached the residence to attempt to rescue the victim, he continued to shoot at them even when injured. N.T. Trial, 10/30/18-11/01/18, at 60-64, 67-69, 83-84, 91, 95-96, 108, 119-21, 127-28. Several of the officers overheard Richter say he wanted to shoot a police officer between the eyes. *See id.* at 68-69, 95-96. This evidence was sufficient to establish the required mental states for his convictions for assault on a law enforcement officer, aggravated assault, and REAP. *See Commonwealth v. Hall*, 830 A.2d 537, 542-53 (Pa. 2003) (evidence fleeing defendant fired gun twice in direction of police sufficient to sustain conviction for aggravated assault); *see also Shaw*, 203 A.3d at 286 (evidence sufficient to sustain conviction for REAP where defendant fired gun into ceiling in close proximity to another person), *Commonwealth v. Martuscelli*, 54 A.3d 940,

949-50 (Pa. Super. 2012) (evidence sufficient to sustain conviction for assault of law enforcement officer and aggravated assault, where defendant engaged in armed standoff with police, stated he wanted to shoot police, and shot in their direction).

Therefore, Richter's challenge to the sufficiency of the evidence does not merit relief.[3]

In his second and final claim, Richter contends the trial court abused its discretion in granting the Commonwealth's motion *in limine* to preclude him from "entering relevant evidence of his mental health treatment and history[.]" Richter's Brief, at 35. He maintains, "his mental functioning was central to his defense negating the *mens rea* element of his charged crimes." *Id.* However, Richter waived this claim.

Our review of a trial court's ruling on a motion *in limine* is well established:

> When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. A trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

---

[3] Moreover, Richter's claim is entirely reliant upon his own testimony and his words heard on the 911 call. However, the jury was not obligated to believe his testimony and the evidence must be looked at in the light most favorable to the Commonwealth, not to him. *See Hall*, 830 A.2d at 542; *Edwards*, 177 A.3d at 970.

***Commonwealth v. Belani***, 101 A.3d 1156, 1160 (Pa. Super. 2014) (quotation marks and citations omitted).

Here, Richter acknowledges he did not present a mental health defense. Richter's Brief, at 41. Moreover, as noted above, the record clearly demonstrates defense counsel agreed on the record she would not bring up Richter's mental health treatment and did not oppose the motion *in limine*. N.T. Trial, 11/01/18, at 254-58.[4] Thus, because Richter did not object to the motion *in limine*, he waived the issue. ***See Commonwealth v. Smith***, 131 A.3d 467, 474 (Pa. 2015) (holding defendant waived challenge on appeal to trial court's grant of Commonwealth's motion *in limine* by failing to object when court announced its ruling). Therefore, because Richter waived this issue, his second and final claim does not merit relief.

Judgment of sentence affirmed.

_____

[4] On appeal, Richter attempts to gloss over this fact by stating he personally protested. ***See*** Richter's Brief, at 35; N.T. Trial 11/01/18, at 254-58. Pennsylvania law does not allow hybrid representation either at trial or on the appellate level. ***See Commonwealth v. Padilla***, 80 A.3d 1238, 1259 (Pa. 2013). Moreover, the United States Supreme Court has held there are numerous choices relating to the conduct of trial, and, with respect to choices by counsel regarding the admission of evidence, the defendant is bound. ***See United States v. Gonzalez***, 553 U.S. 242, 248-49 (2008). Thus, at least for purposes of direct appeal, Richter cannot avoid waiver by claiming he personally disagreed with counsel's decision not to oppose the motion *in limine*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/3/2020