J-A25044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ARTURO SHAW, | : | |
| | : | |
| Appellant. | : | No. 3945 EDA 2017 |

Appeal from the Judgment of Sentence, December 1, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0013005-2015.

BEFORE:  PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED JANUARY 15, 2019**

Arturo Shaw appeals the judgment of sentence imposed following his convictions for a firearm violation, possession of an instrument of crime, and recklessly endangering another person.[1]  We affirm.

The trial court summarized the pertinent facts as follows:

> On July 20, 2017, a [bench] trial was held before this court.  [C.B.] testified that around 12:00 a.m. on November 18, 2015 she was in her car near her house on 57th Street and Girard Avenue in Philadelphia.  As [C.B.] pulled up to her house, she saw on her left side about fifteen (15) to twenty (20) feet away [Shaw] on the porch of his row home talking loudly to himself with one of his arms extended upward above his head into the air.  Fearing for her safety, [C.B.] quickly got out of her vehicle and ducked behind the driver's side of her vehicle waiting for an opportunity to run to the front of her house.  Simultaneously, she then heard a gunshot and observed a small flash of light emerge from

_____

[1] 18 Pa.C.S.A. §§ 6105, 907, and 2705.

around the hand area of [Shaw's] extended arm. After the gunshot she heard something fall straight down or bounce off of another object. At the point she felt secure enough, she ran to her house for safety and called the police. The whole encounter lasted approximately two (2) minutes.

[C.B.] lived at her house since 2009, knowing neighbors by their faces but not personally. She recognized [Shaw] from seeing him one or twice a month as her next-door neighbor. She was also familiar with the sound of a gunshot from a handgun based on past experience. [C.B.] later gave a statement to Detective Maurizio of the Philadelphia Police and identified her location and [Shaw's] location from a Google Map photograph. [C.B.] also positively identified [Shaw] from a photograph presented to her by Detective Maurizio at 2:30 a.m. after the incident.

On November 19, 2015 at 7:15 a.m., Detective Maurizio executed a search warrant at [Shaw's] residence at 1244 North 57th Street and recovered the following: a box labeled .45 auto, containing 20 live rounds; a box labeled .38 special, containing 32 live rounds; two labeled 12-gauge sluggers, containing 5 live rounds each; two live rounds stamped 12 gauge; one fired cartridge casing stamped .38 special; and a black BB gun ASG Model CZ75D. The BB gun recovered was operable and resembled a CZ75D semiautomatic pistol. [Shaw] did not possess a license to be in possession of the firearm and a previous conviction for involuntary manslaughter made him ineligible to possess any firearm.

Following his arrest and while incarcerated, [Shaw] sent several letters to [C.B.] In the letters, [Shaw] apologized to her for the incident and purported that he had become aware that the Defender Association of Philadelphia was petitioning for her arrest and attached false supporting documents. One of these supporting documents was a forged Defender Association memorandum that called for [C.B.] to be arrested for both perjury and falsely reporting information to law enforcement authorities. Copies of the Philadelphia Police Department's arrest memorandum and investigation report, as well as the notes of testimony from the preliminary hearing, were attached to the letter with handwritten notes claiming inconsistencies in [C.B.'s] statements. Several Pennsylvania criminal statutes and

sections of the Pennsylvania Rules of Criminal Procedure were also attached to the letter in [an] attempt to lend it an appearance of authenticity.

[Shaw's] nine telephone calls from prison while awaiting trial [as well the transcripts thereof were admitted at trial]. On the calls between [Shaw] and his sister from February 10 thru February 18, 2016, he appears to discuss the idea of offering money to [C.B.] to persuade her not to show up to testify at trial. On a series of calls from February 14, 2016 to February 15, 2016, [Shaw] also spoke with his sister about retrieving a hidden item, presumably a weapon, to evade its discovery from the police.

Trial Court Opinion, 3/19/18, at 1-4 (citations, footnote, and references to trial exhibits omitted).

Based on this evidence, the trial court found Shaw guilty of the above charges. On December 1, 2017, the court sentenced Shaw to an aggregate term of three to six years of imprisonment. This appeal timely followed. Both Shaw and the trial court have complied with Pa.R.A.P. 1925.

Shaw raises the following issue on appeal:

Is the evidence of record insufficient as a matter of law to convict Shaw of recklessly endangering another person, 18 Pa.C.S.A. § 2705, because: (1) the only weapon recovered by police was a BB gun, (2) Shaw never aimed any BB gun or other instrument at C.B. or any other person, and (3) there was no damage observed in the porch roof where a projectile would have been discharged had Shaw been firing a firearm as opposed to a BB gun?

*See* Shaw's Brief at 5.

A claim challenging the sufficiency of evidence is a question of law, and as such the standard of review is *de novo* and the scope of review is plenary. ***Commonwealth v. Weimer***, 977 A.2d 1103, 1104-05 (Pa. 2009).

- 3 -

When this Court reviews a challenge to the sufficiency of evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Wise*, 171 A.3d 784, 790 (Pa. Super. 2017). Where there is sufficient evidence to allow the trier of fact to find every element of the crime has been established beyond a reasonable doubt, a challenge to the sufficiency of the evidence fails. *Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa. Super. 2016).

The evidence established by the Commonwealth at trial need not preclude every possibility of innocence, and the finder of fact is free to believe all, part, or none of the evidence presented. *Id*. It is not within this Court's authority to re-weigh the evidence presented and substitute our own judgment over that of the fact finder. *Id*. Moreover, the Commonwealth may sustain its burden of proof by wholly circumstantial evidence. *Commonwealth v. Wise*, 171 A.3d 784, 790 (Pa. Super. 2017).

Finally, "a solitary witness's testimony may establish every element of a crime, assuming that it speaks to each element, directly and/or by rational inference." *Commonwealth v. Johnson,* 180 A.3d 474, 479 (Pa. Super. 2018) (emphasis omitted).

"A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of

death or serious bodily injury." 18 Pa.C.S.A. § 2705. "Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Reckless endangerment of another person ("REAP") requires the creation of danger, so the Commonwealth must prove the existence of an actual present ability to inflict harm to another. *Commonwealth v. Reynolds*, 835 A.2d 720, 727-28 (Pa. Super. 2003). This Court has held that both a handgun and a BB gun are capable of causing serious bodily injury or death. *Commonwealth v. Peer*, 684 A.2d 1077, 1081 (Pa. Super. 1996); *Commonwealth v. Ramos*, 920 A.2d 1253, 1257 (Pa. Super. 2007). However, the mere act of discharging a firearm does not on its own constitute recklessly endangering another person. *See Commonwealth v. Kamenar*, 516 A.2d 770 (Pa. Super. 1986) (finding evidence insufficient to support conviction where the accused fired a single gunshot away from the direction of other people, into a wooded hillside behind his home); *Commonwealth v. Smith*, 447 A.2d 282 (Pa. Super 1982) (finding evidence insufficient where no evidence indicated that the rifle was fired at the witness, and it was just as likely that the accused safely fired the rifle into the air). However, discharging a firearm near another person is sufficient to support such a conviction. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009).

To support his sufficiency challenge, Shaw references the fact that C.B.'s testimony was equivocal as to whether he had a handgun or BB gun in his

hand. Moreover, he argues that "[r]egardless of the item employed, there is no dispute that the hand holding an object was pointed straight up over [his] head" and that he "never pointed his hand or object toward [C.B.] or anyone else." Shaw's Brief at 14. In addition, he asserts that C.B. did not testify as to any damage to the porch consistent with a handgun being fired and the police did not note any such damage when they executed the search warrant at Shaw's house. Given these facts, Shaw asserts that this Court's prior decisions in **Kamenar**, **supra**, and **Smith**, **supra** "are both apposite and controlling." Shaw's Brief at 15. As in those cases, Shaw contends that the evidence presented by the Commonwealth in his case was insufficient to support his REAP conviction. We disagree.

The trial court found that the evidence presented by the Commonwealth was similar to the facts of **Hartzell**, **supra**, a case in which this Court found sufficient evidence to support the REAP conviction. The trial court explained:

> In **Hartzell**, a defendant placed two men in danger by discharging his firearm toward a creek near a bridge from approximately ninety (90) feet away, approximately twenty-five (25) to thirty (30) feet away from the men's location on the bridge. While the defendant did not aim his firearm directly at the two men, the Superior Court found that since the water was shallow and there were rocks in the stream, it was hardly inconceivable that a bullet fired into the nearby stream could have struck a rock or other object and deflected up and hit one of them. The Court found that the actual discharging of a firearm in the vicinity of others constituted a sufficient danger of death or serious bodily injury to satisfy the statute of [REAP]. As for the *mens rea* of a conscious disregard of a known risk, the defendant's purposeful shot into the water and awareness of the men on the bridge were more than enough to satisfy the needed

mental state. Therefore, the Court held that the evidence was sufficient to find the defendant guilty of [REAP].

Here, [Shaw] discharged a firearm in close proximity to [C.B.], only fifteen (15) to twenty (20) feet away. While [Shaw] did not directly aim the firearm at [C.B.], he did discharge it above his head into the air, creating a risk of causing serious bodily injury under the same reasoning applied in *Hartzell*. The police recovered from [Shaw's] residence a substantial amount of ammunition for shotguns, handguns, and BB guns. It is of particular note that among the ammunition recovered in [Shaw's] home was a single fired cartridge casing stamped .38 special, which is primarily used in handguns. [C.B.] was unable to precisely identify the type of firearm utilized by [Shaw] but she believed the sound of its discharge to be the same from gunshots she had heard before. The recovered single fired cartridge casing and [C.B.'s] description of the gunshot sound and observed flash are strong circumstantial evidence that Shaw discharged a firearm.

Trial Court Opinion, 3/19/18, at 7-8 (citations omitted).

The trial court further rejected the significance Shaw gave to the fact an actual gun was never recovered, the fact that C.B. could not identify the weapon used, and that Shaw never aimed a gun directly at her:

The search of [Shaw's] residence was executed seven (7) hours after the time of the incident, allowing ample time for [Shaw] to remove any handguns from his residence. During [Shaw's] pre-trial incarceration in a recorded phone call, he also discussed with his sister about retrieving a weapon he had previously hidden, presumably a handgun. It is of no question either that a handgun is capable of causing serious bodily injury or death to allow for a conviction of [REAP]. However, [Shaw's] argument on appeal frames it as if the only firearm that should be considered is the recovered BB gun. But even within that framework, [Shaw's] argument does not pass muster.

The metallic ball projectile shot from the BB gun could have also easily caused serious bodily harm to [C.B.] The

- 7 -

BB gun recovered [from Shaw] was an ASG Model CZ75D, a spring-type gun capable of reaching a velocity of 207 feet per second (fps). At a minimum of approximately 197, fps, a BB gun can penetrate the cranium, fracture bones and permanently damage eyes. The discharged metallic ball could have feasibly struck [C.B.] or any other innocent bystander on its way back down to the ground or caused another object to fall onto her. [C.B] specifically testified that she heard something fall straight down or bounce off of another object immediately after [Shaw] discharged his firearm. Moreover, [Shaw] not only recklessly endangered [C.B], but also other occupants of his own row home and those in the immediate area. [Shaw's] argument on appeal that he never specifically aimed his firearm at another person or in their general direction is of no consequence given the overall facts—his vicinity to [C.B.] and other in an urban residential area caused a sufficient danger of serious bodily injury as in ***Hartzell***.

Trial Court Opinion, 3/19/18, at 8-9 (citations and footnotes omitted).

Finally, the trial court found that the Commonwealth established the requisite *mens rea* to support Shaw's REAP conviction:

As it regards the conscious disregard of a known risk, [Shaw's] deliberate shot from his firearm in a residential neighborhood fulfills the awareness requirement. [C.B] was within twenty (20) feet of [Shaw] during most of the encounter. In addition, [Shaw] shared his row home with several other people in an urban residential neighborhood and, therefore, would have reasonably known others were likely nearby inside or outside of their homes. Furthermore, [Shaw's] letters to [C.B.] expressing regret for his actions, hastily forged documents to pressure her not to appear at trial, and [Shaw's] discussions on prison calls demonstrate a recognition of risk and guilt. Therefore, the evidence was sufficient to find [Shaw] guilty of [REAP].

***Id.*** at 9.

Our review of the record supports the trial court's conclusions. Moreover, given these conclusions, Shaw's reliance upon this Court's previous decisions in **Kamenar** and **Smith** is misplaced. First, in both of those cases, there was no evidence that any person was in actual danger of being injured or killed by the gunshot. In **Kamenar** the gun was fired into a deserted wooded hillside, and in **Smith** no evidence indicated that the gun was fired in a direction that would not endanger the only witness. Here, Shaw fired a handgun into his porch ceiling with a witness mere feet away. Like in **Hartzell**, Shaw's actions recklessly endangered another person because it is possible that the shot could have ricocheted off the porch ceiling toward C.B. as she hid behind her car, creating a risk of serious bodily harm.

Moreover, as noted by the trial court, even if the shot had come from a BB gun, C.B. was still in danger of serious bodily harm. Although the trial court characterized Shaw as discharging his weapon "in the air," he did not do so toward from a distance or into the sky above: rather Shaw discharged his weapon into the ceiling of his porch in an urban residential area. He was in close vicinity to both C.B. and other people who lived in nearby row homes. It is feasible that the projectile could have struck C.B. or another person.[2] Like in **Hartzell**, this created a sufficient danger of serious bodily injury.

_____

[2] While we only discuss the BB gun, circumstantial evidence indicates an actual firearm may have been used on the night in question. Our analysis would be the same. **Ramos**, **supra**; Trial Court Opinion, 3/19/18, at 7-8.

We find that the Commonwealth proved beyond a reasonable doubt that Shaw engaged in conduct that placed another in danger of death or serious bodily injury. It is not within our province to re-weigh the facts found by the trial court as finder of fact. ***Rodriguez***, ***supra***.[3] It is our job to determine whether each element was established beyond a reasonable doubt based on the evidence found by the trial court, and as such we find that the evidence was sufficient to sustain Shaw's conviction for recklessly endangering another person.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/15/19

---

[3] Shaw's claim that the Commonwealth failed to introduce evidence of damage to the porch's ceiling involves the weight the trial court assigned the evidence presented by the Commonwealth, not its sufficiency.