J-S37004-20

2020 PA Super 271

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA HEADLEY | : | |
| | : | |
| Appellant | : | No. 76 EDA 2020 |

Appeal from the Judgment of Sentence Entered December 6, 2019
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0000546-2019

BEFORE:  SHOGAN, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

OPINION BY SHOGAN, J.:                                    Filed: November 19, 2020

Appellant, Joshua Headley, appeals from the judgment of sentence

entered on December 6, 2019, in the Chester County Court of Common Pleas.

We affirm.

On September 6, 2019, Appellant was tried on stipulated facts before

the trial court sitting without a jury.  The stipulated facts are as follows:

> 1. On or about January 5, 2019, at approximately 3:00 p.m.,
> [Appellant] discharged a firearm while in his apartment located at
> 425 Crest Lane, Pottstown, Chester County, Pennsylvania.
>
> 2. [Appellant] was in his apartment with Kimberly R. Green.
> [Appellant] and Ms. Green were involved in a romantic
> relationship.  On January 5, 2019, [Appellant] and Ms. Green
> engaged in an argument. During this argument [Appellant]
> discharged his nine-millimeter handgun inside the apartment unit.
>
> 3. The bullet fired by [Appellant] passed through the floor of
> [Appellant's] apartment into and then through the apartment
> below, 415 Crest Lane, Pottstown, Chester County, Pennsylvania.

The resident of the 415 Crest Lane apartment was 91-year-old Marie Ilg.

4. Ms. Ilg heard the argument between [Appellant] and Ms. Green, followed by a loud noise. The victim was sitting in a chair in her living room when the bullet fired by [Appellant] entered her residence through the ceiling, proceeded past her, then pierced the apartment wall next to an exterior window within three or four feet of where she sat.

5. Ms. Ilg called law enforcement and Officers Gregory Bickel and Nicholas Campitelli from the East Coventry Township Police Department responded to the location.

6. The officers spoke with [Appellant], Ms. Green, and Ms. Ilg. Both Ms. Green and Ms. Ilg gave officers written statements.

7. Ms. Green's written statement is attached as Commonwealth Exhibit 1.

8. Ms. Ilg's written statement is attached as Commonwealth Exhibit 2.

9. The officers' investigation revealed that a bullet had penetrated the ceiling of Ms. Ilg's apartment by way of the floor of [Appellant's] apartment. The bullet traversed Ms. Ilg's living space and impacted a wall next to a chair in her living room.

10. Photos from Ms. Ilg's residence of the bullet holes and chair are attached as Exhibit 3.

11. [Appellant] told investigating officers that he had discharged the firearm while in his apartment located at 425 Crest Lane, Pottstown, Chester County, Pennsylvania.

12. The bullet from the firearm [Appellant] discharged passed from [Appellant's] apartment into the victim's apartment.

13. [Appellant's] apartment is a separately secured unit in an apartment building.

14. The victim's apartment, 415 Crest Lane, Pottstown, Chester County, Pennsylvania, is a separately secured unit in the same apartment building.

15. The firearm [Appellant] discharged is a firearm within the definition of §2707.1(d).

16. §2707.1(d) also defines an "occupied structure" as "any structure, vehicle, or place adapted for overnight accommodation of persons or for carrying on business therein, ... whether or not a person is actually present."

17. [Appellant] discharged the firearm intentionally, knowingly, or recklessly.

18. None of the defenses in §2707.1(c) apply in this case.

19. In discharging a firearm [Appellant] consciously ignored a great and unjustifiable risk that what he was doing would cause another person to be seriously injured.

20. In discharging a firearm [Appellant] recklessly placed Marie Ilg in danger of death or serious bodily injury.

Stipulated Facts, 9/6/19, at 1-3.

The trial court summarized the procedural history as follows:

On September 6, 2019, following a stipulated facts trial before the undersigned sitting without a jury, [Appellant] was found guilty of discharge of a firearm into an occupied structure,[1] and recklessly endangering another person [("REAP")].[2]

[1] 18 Pa.C.S.A. § 2707.1[.]

[2] 18 Pa.C.S.A. § 2705[.]

[Appellant] was sentenced on December 6, 2019 to 11 ½ to 23 months [of] incarceration and 1 year probation, consecutive to parole, for discharge of a firearm into an occupied structure and 1 year probation concurrent to the above sentence for recklessly endangering another person. [Appellant] was also ordered to perform 50 hours of community service. [Appellant] did not file post-sentence motions. [Appellant] filed a timely Notice of Appeal on December 26, 2019.

Trial Court Opinion, 1/23/20, at 1. Both the trial court and Appellant complied

with Pa.R.A.P. 1925.

- 3 -

On appeal, Appellant raises the following issues for our consideration:

1. Was the evidence insufficient to establish guilt beyond a reasonable doubt that the Appellant was guilty of recklessly endangering another person?

2. Was the evidence insufficient to prove beyond a reasonable doubt that the Appellant was guilty of having discharged a firearm into an occupied structure?

Appellant's Brief at 3.[1]

In both issues, Appellant challenges the sufficiency of the evidence. A challenge to the sufficiency of evidence presents a question of law, and as such, the standard of review is *de novo* and the scope of review is plenary. *Commonwealth v. Weimer*, 977 A.2d 1103, 1104-1105 (Pa. 2009). Additionally:

When presented with a claim that the evidence was insufficient to sustain a conviction, an appellate court, viewing all of the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, must determine whether the evidence was sufficient to enable the fact-finder to find that all elements of the offense were established beyond a reasonable doubt.

*Commonwealth v. Woody*, 939 A.2d 359, 361 (Pa. Super. 2007) (citation omitted). "The Commonwealth may sustain its burden by proving the crime's elements with evidence which is entirely circumstantial and the trier of fact, who determines credibility of witnesses and the weight to give the evidence produced, is free to believe all, part, or none of the evidence." *Id.* at 361-

_____

[1] For purposes of our disposition, we have renumbered Appellant's issues on appeal.

362 (internal citation and quotation marks omitted). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014). "Additionally, we may not reweigh the evidence or substitute our own judgment for that of the factfinder." *Commonwealth v. Walker*, 139 A.3d 225, 229 (Pa. Super. 2016).

In his first issue, Appellant alleges that the evidence was not sufficient to establish the crime of REAP. We disagree.

A person is guilty of REAP, "a misdemeanor of the second degree[,] if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. To sustain a conviction for REAP, "the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created." *Commonwealth v. Hopkins*, 747 A.2d 910, 915 (Pa. Super. 2000) (internal citation omitted).

The mere act of discharging a firearm, by itself, does not constitute REAP. *See Commonwealth v. Kamenar*, 516 A.2d 770 (Pa. Super. 1986) (concluding the evidence insufficient to support a conviction of REAP where the defendant fired a single gunshot away from the direction of other people and into a wooded hillside). However, discharging a firearm near another person or in a manner where the projectile could have struck a person is

sufficient to prove REAP. ***Commonwealth v. Shaw***, 203 A.3d 281, 284 (Pa. Super. 2019) (citing ***Commonwealth v. Hartzell***, 988 A.2d 141 (Pa. Super. 2009)).

After review, we conclude that there is no merit to this issue. As specified in the stipulated facts enumerated above, Appellant was arguing with his paramour inside a multi-unit apartment building. During this argument, Appellant discharged a firearm through the floor of his apartment. The bullet passed through Appellant's apartment floor and through the ceiling of the apartment below. The apartment below Appellant's was occupied by Ms. Ilg. The bullet progressed through Ms. Ilg's home within three or four feet of her. The projectile then penetrated a wall inside of Ms. Ilg's apartment.

These facts establish the elements of REAP. Appellant was not merely presently able but did, in fact, fire a projectile into Ms. Ilg's apartment and in Ms. Ilg's direction. Appellant's reckless conduct of firing a bullet into Ms. Ilg's home, in her direction, and within three or four feet from where Ms. Ilg was seated, placed Ms. Ilg in danger of death or serious bodily injury pursuant to 18 Pa.C.S. § 2705. ***Shaw***, 203 A.3d at 284. Appellant disregarded the risk of death or injury and could have seriously wounded or killed Ms. Ilg. We conclude that Appellant's actions created actual danger and not merely the apprehension of danger. ***Hopkins***, 747 A.2d at 915. For these reasons, we conclude that the evidence was sufficient to prove REAP, and Appellant's claim of error is meritless.

In his second issue, Appellant asserts that the evidence was insufficient to prove that he committed the crime of discharging a firearm into an occupied structure in violation of 18 Pa.C.S. § 2707.1. Appellant challenges the interpretation of the term "occupied structure," and he avers that because he and Ms. Ilg lived in the same apartment building, he could not have discharged his firearm "into an occupied structure" as he was already within that structure. Appellant's Brief at 9-12. After review, we disagree.

When called upon to review the interpretation of a statute, we adhere to the following:

> Under the Statutory Construction Act of 1972, our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review. We are mindful that the object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly and the best indication of the legislature's intent is the plain language of the statute. When the words of a statute are clear and unambiguous, we may not go beyond the plain meaning of the language of the statute under the pretext of pursuing its spirit. However, only when the words of the statute are ambiguous should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in Section 1921(c) of the Statutory Construction Act, 1 Pa.C.S. § 1921(c).

*Commonwealth v. Lites*, 234 A.3d 806, 812-813 (Pa. Super. 2020). Statutory interpretation is a question of law; our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Smith*, 221 A.3d 631, 636 (Pa. 2019).

The statute at issue, 18 Pa.C.S. § 2707.1, provides as follows:

**(a) Offense defined.--**A person commits an offense if he knowingly, intentionally or recklessly discharges a firearm from any location into an occupied structure.

**(b) Grading.--**An offense under this section shall be a felony of the third degree.

**(c) Defense.--**It is a defense to prosecution under this section that:

(1) the person discharging the firearm was a law enforcement officer engaged in the performance of his official law enforcement duties; or

(2) the person discharging the firearm was engaged in a hunting activity; and

(i) the discharge of the firearm took place from a location where the hunting activity is lawful; and

(ii) the passage of the projectile from the firearm into the occupied structure was not intentional, knowing or reckless.

**(d) Definitions.--**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Firearm."** Any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosion or the frame or receiver of any such weapon.

**"Occupied structure."** Any structure, vehicle or place adapted for overnight accommodation of persons or for carrying on business therein, whether or not a person is actually present.

18 Pa.C.S. § 2707.1.

Appellant cites ***Commonwealth v. McCoy***, 962 A.2d 1160 (Pa. 2009), in support of his argument, asserting that because his apartment and Ms. Ilg's apartment were within the same building, they were inside one occupied

structure. Appellant alleges that, pursuant to *McCoy*, a person cannot fire "into" an occupied structure if that person is already within the occupied structure. Appellant's Brief at 11-12. Appellant contends that apartments located inside of one building are not separate occupied structures under Section 2707.1, and "[a] projectile only travels 'into' an occupied structure when the projectile begins its journey outside of the structure and either enters the structure through an opening or penetrates the outer wall." Appellant's Brief at 12 (quoting *McCoy*, 962 A.2d at 1167). After review, we conclude that although the *McCoy* Court interpreted and explained the terms used in Section 2707.1, the facts of that case are distinguishable, and *McCoy* does not preclude Appellant's conviction.

In *McCoy*, the appellant ("McCoy") entered a restaurant where approximately 250 customers were dining. McCoy approached the manager and informed him that he had eaten at the restaurant earlier and had become ill as a result. The manager asked McCoy some questions regarding what he ate and whether he had a receipt. While the manager and McCoy were speaking, a large group of customers entered the restaurant and the manager walked to his office to "attend to business" for the customers. McCoy followed and the manager asked McCoy to wait in a chair outside of the office. McCoy initially waited, but then opted to follow the manager inside the office. McCoy then reached into his pocket and withdrew a handgun. Upon seeing the gun, the manager ran out of the office and into the kitchen area of the restaurant.

McCoy pursued the manager into the dining area, and McCoy fired his gun multiple times in the direction of the kitchen. McCoy then left the restaurant, and no one was physically injured. *McCoy*, 962 A.2d at 1161.

Following a nonjury trial, McCoy was convicted of several crimes including discharging a firearm into an occupied structure. *McCoy*, 962 A.2d at 1161. McCoy filed a timely appeal, and in its Pa.R.A.P.1925(a) opinion, the trial court concluded:

> [McCoy ] violated Section 2707.1's prohibition against discharge of a firearm into an occupied structure by firing his gun while he was within the [restaurant]. Section 2707.1(a) defines the offense as follows: "A person commits an offense if he knowingly, intentionally or recklessly discharges a firearm from any location into an occupied structure." The trial court acknowledged that applying the plain meaning of "into" would necessitate that [McCoy] be outside the structure in order to fire into it. However, the trial court also noted that the statutory language dictated that the shooter could be firing "from any location" into the occupied structure. The trial court determined that the language "from any location" modified the word "into," requiring a finding that the statute encompassed firing a weapon both into and from within the occupied structure. Thus, the trial court determined that [McCoy] was appropriately found guilty because he fired his gun into the kitchen area of the restaurant, which satisfies the definition of an occupied structure under the statute.

*McCoy*, 962 A.2d at 1162.

> The Superior Court affirmed in a published opinion. *Commonwealth v. McCoy*, 928 A.2d 306 (Pa. Super. 2007). The court viewed [McCoy's] claim that he could not be convicted of discharging a firearm into an occupied structure when he was inside the structure at the time as a challenge to the sufficiency of the evidence, noting that [McCoy] argued that there was no evidence that he was outside of the structure at the time he fired his gun. Agreeing with [McCoy] that the language of Section 2707.1 is unambiguous, the court focused on the meaning of the phrase "from any location," but failed to discuss the meaning of

- 10 -

the word "into" or its effect on the statute's meaning. The Superior Court concluded that the plain language of the statute prohibited discharging a firearm "from any location;" therefore, the statute did not require that the defendant be outside the occupied structure when the gun was fired. In a footnote, the Superior Court opined that an individual could even commit an offense under Section 2707.1 by discharging a firearm from one room to another within an occupied structure. Thus, the Superior Court concluded that, because the General Assembly had included the words "from any location" in the statute, the "clear and unambiguous wording of Section 2707.1 does not limit a defendant's location to outside of a structure when discharging a firearm." **McCoy**, 928 A.2d at 311. The Superior Court acknowledged that this was a case of first impression in the Commonwealth, but dismissed [McCoy's] citations to authority from other jurisdictions as irrelevant because the cases were "factually distinguishable" from the case at bar. **Id.** at 310.

**McCoy**, 962 A.2d at 1162.

The Pennsylvania Supreme Court granted allowance of appeal "because the language of Section 2707.1 is arguably open to more than one interpretation, and the Superior Court's decision was the first instance of a court in Pennsylvania interpreting the meaning and application of the statute." **McCoy**, 962 A.2d at 1162. The Supreme Court noted that our Court failed to discuss or give effect to the word "into" from Section 2707.1. The Supreme Court concluded that "reading the statute so that 'into' qualifies the term 'from any location' yields logical results that do not require adding additional terms to the statute." **Id.**

Our Supreme Court held:

the plain meaning of the term "into" requires that the original location is outside of the destination—one does not walk "into" a room one is already standing in; likewise, a gun is not fired "into" a building when the shooter is located inside the building. A

- 11 -

projectile only travels "into" an occupied structure when the projectile begins its journey outside of the structure and either enters the structure through an opening or penetrates the outer wall.

Under this construction, to be deemed criminal, the statute requires that the defendant discharge the firearm from any location outside the structure, and that the projectile move into the structure. Thus, "into" modifies the meaning of "from any location" to include only any location from which the shooter can physically shoot "into" the occupied structure, including other structures, moving vehicles and any other location outside of the occupied structure.

This is a logical reading which, though it may make the phrase "from any location" seem like a statement of the obvious, nevertheless does not ignore its meaning in context. When there is an interpretation available that gives effect to all of the statute's phrases and does not lead to an absurd result, that interpretation must prevail. The best and logical reading of the statute, therefore, counsels that the word "into" modifies the phrase "from any location." This construction also squares with the Section's title, which speaks of firing "into," without any location qualifier.

*Id.* at 1168. The Court continued:

the view of the Commonwealth and the lower courts that Section 2707.1 should be interpreted as broadly as possible, so as to criminalize both firing into and firing within an occupied structure, must fail. This expansive interpretation of Section 2707.1, however ingenious or intricate the reading may be, would operate to criminalize conduct that the statute, on its face, does not embrace. Thus, the statute, as interpreted by the lower courts, fails to give fair notice of what conduct the statute prohibits.

\* \* \*

The language of Section 2707.1, fairly interpreted in light of our principles of statutory construction, requires that an actor be located outside of an occupied structure in order to fire "into" that structure. Here, it was undisputed that McCoy was inside the structure.

*Id.* at 1168-1169.

- 12 -

In the instant case, Appellant avers that because he and Ms. Ilg lived in the same apartment building, they were inside the same occupied structure pursuant to **McCoy**. Appellant's Brief at 11-12. Appellant asserts "[e]ach single unit cannot be construed as an 'occupied structure' as defined in § 2707.1." **Id.** at 12.

In support of his argument, Appellant claims that Section 2707.1 does not define "occupied structure" in the same manner as other statutes. Appellant's Brief at 12-13. Appellant cites to the arson statute for the proposition that the legislature could have defined individual apartments in a single structure as separate occupied structures, but it did not. Appellant's Brief at 12. The arson statute, 18 Pa.C.S. § 3301, defines occupied structure in the same manner as Section 2707.1. However, it adds an additional sentence that we conclude is irrelevant to Section 2707.1. Section 3301 defines occupied structure as "Any structure, vehicle or place adapted for overnight accommodation of persons or for carrying on business therein, whether or not a person is actually present. **If a building or structure is divided into separately occupied units, any unit not occupied by the actor is an occupied structure of another**." 18 Pa.C.S. § 3301(j) (emphasis added). Although this language contemplates separate units in a structure, it does not prevent the conclusion that an apartment is itself an

occupied structure under Section 2707.1.[2]  Rather, the arson statute describes

who occupies the units of a structure, but it defines "occupied structure" using

the same language as Section 2707.1.

Section 2707.1(d) unambiguously defines "occupied structure," and it

includes a "place adapted for overnight accommodation of persons."  It cannot

be gainsaid that Ms. Ilg's apartment is not "a place adapted for overnight

accommodation of persons."  Apartments are separate places of abode, and

the autonomy provided an apartment is distinct from areas of a restaurant or

rooms within the same home.  Our Supreme Court's definition of "place of

abode" is informative:

> When interpreting a statute, words that are not defined in the statute shall be construed according to their common and approved usage. 1 Pa.C.S. § 1903(a).  Black's Law Dictionary defines "place of abode" as "one's residence or domicile." Black's Law Dictionary 1149 (6th Edition 1991).  Black's further defines domicile as "a person's legal home," Black's Law Dictionary 485, and residence as a "place where one actually lives or has a home; a person's dwelling place or place of habitation; an abode; house where one's home is; a dwelling house."  Black's Law Dictionary 1309.  Finally, Black's defines dwelling as "the house or other structure in which a person or persons live; a residence; abode; habitation; the apartment or building, or group of buildings,

---

[2] Appellant also cites to the burglary statute at 18 Pa.C.S. § 3502 and the criminal trespass statute at 18 Pa.C.S. § 3503 to support his assertion that apartments in the same building are one occupied structure.  Appellant's Brief at 13.  However, upon review, we note that the burglary and criminal trespass statutes employ the definition of "occupied structure" from 18 Pa.C.S. § 3501 which uses language identical to Section 2707.1.  **See** 18 Pa.C.S. § 3501 (defining "occupied structure" as "Any structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present.").  Therefore, Appellant's reliance on these statutes does not advance his argument.

occupied by a family as a place of residence. Structure used as a place of habitation." Black's Law Dictionary 505 .... In addition, the Dictionary of Modern American Usage defines "place of abode" as "a pretentious way of referring to someone's home or house." The Dictionary of Modern American Usage 5 (1998) ....

*Commonwealth v. Ortiz*, 738 A.2d 403, 404-405 (Pa. 1999) (internal emphases omitted). Separate apartments within one building are distinguishable from separate areas of a restaurant, or even separate rooms within a single dwelling. *McCoy*, 962 A.2d at 1167-1168. Pursuant to Section 2707.1, Ms. Ilg's apartment was an occupied structure.

Indeed, *McCoy* specifically stated that "'into' modifies the meaning of 'from any location' to include only any location from which the shooter can physically shoot 'into' the occupied structure, **including other structures**[.]" *McCoy*, 962 A.2d at 1168 (emphasis added). Appellant was inside his apartment at 425 Crest Lane, an occupied structure, when he discharged a round from his firearm into Ms. Ilg's apartment, which is located one level below his at 415 Crest Lane, another occupied structure. There is no dispute that these are separate apartments or that Appellant fired into Ms. Ilg's apartment. Accordingly, the evidence established that Appellant discharged a firearm into Ms. Ilg's apartment, an occupied structure, and we find that these facts satisfy all of the elements of Section 2707.1 pursuant to *McCoy*.

For the reasons stated above, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that Appellant committed the

crimes of REAP and discharging a firearm into an occupied structure. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/19/20