**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK A. IVIE, JR. | : | |
| | : | |
| Appellant | : | No. 358 MDA 2022 |

Appeal from the Judgment of Sentence Entered December 22, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0003018-2020

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                **FILED:  MARCH 3, 2023**

Appellant Mark A. Ivie, Jr. appeals from the judgment of sentence entered following his convictions for aggravated assault, recklessly endangering another person (REAP), and related offenses.  Appellant challenges the sufficiency of the evidence supporting his REAP conviction and raises claims concerning the discretionary aspects of his sentence.  We affirm.

The trial court summarized the underlying facts and procedural history of this matter as follows:

> In the early morning hours of July 5, 2020, Appellant opened fire into a group of six young men with a short-barrel AR-15 rifle. Earlier that evening, the victims were at a cookout, and one victim, Mr. Randy Brandt, uploaded a video of himself rapping onto the social media platform Snapchat.  Appellant was able to see the video Mr. Brandt posted, and he was not a fan, so much so that Appellant left comments with his negative opinions on Mr. Brandt's video.  Appellant and Mr. Brandt then exchanged angry messages back and forth, followed by a screaming telephone call in which Appellant invited Mr. Brandt to his home at 6 Blackberry

Lane in Ephrata Township for a fist fight. Despite the hour, around 1:30 a.m., Mr. Brandt agreed and brought the other five victims with him to Blackberry Lane. While waiting for the victims' arrival, Appellant asked his father to bring him a gun. Appellant asserted that having the gun would ensure a fair fight, and he waited for the victims with his father on the front porch, brandishing a loaded AR-15 short-barreled rifle.

Mr. Brandt arrived with Devon Schaefer, Jeremy Ross-Gates, Billy Joe Varner, Josue Colon, and Joshua Norwood, and the first physical fight broke out between Appellant and Mr. Schaefer, while Appellant's father beat Mr. Ross-Gates. When Appellant was able to break free, he then grabbed the rifle, disengaged the safety mechanism, and fired into the group of men fourteen times. Mr. Varner was shot in the left side of his chest, Mr. Colon was shot in the face and the abdomen, Mr. Schaefer was shot through the arm, Mr. Brandt was shot in the earlobe, a bullet grazed Mr. Norwood's arm, and Mr. Ross-Gates was severely beaten by the Appellant's father. Police later found several rounds of ammunition had hit neighboring homes, one of which was occupied by two people,[1] and also that the residents of 3 Blackberry Lane had a security camera which had recorded the entire incident. Following Appellant's admission to police that he was the person responsible for shooting the firearm, he was arrested and charged with six counts of attempted homicide [and] six counts of aggravated assault [for firing shots at the six men involved in the altercation. He was also charged with] two counts of discharging a weapon into an occupied structure and two counts of [REAP for firing shots into two nearby residences.]

---

[1] At trial, the parties entered the following stipulation:

[O]n the night of July 4, 2020 through July 5, 2020, the residence at 6 Eastbrooke Drive was occupied by two individuals. These two individuals were asleep inside the residence at the time the gunfire occurred on the early morning hours of July 5, 2020. If these individuals were called to testify they would testify that the bullet strikes observed on their residence were not present prior to the discharge of gunfire on the early morning hours of July 5, 2020.

N.T. Trial, 10/25/21, at 393.

On August 11, 2021, Appellant filed a pretrial motion *in limine* to preclude the Commonwealth from introducing video evidence of a firearm demonstration from being admitted as substantive evidence at trial. After briefings from both parties, Judge Margaret Miller denied the motion, and the video was admitted at trial. On October 27, 2021, Appellant was convicted of five counts of attempted voluntary manslaughter, five counts of aggravated assault, two counts of discharging a firearm into an occupied structure, and two counts of REAP.[2]

On December 22, 2021, the court imposed an aggregate sentence of 24 to 50 years' incarceration.[3] On December 31, 2021, Appellant filed a timely post-sentence motion, arguing that the court abused its discretion in sentencing because the sentence is manifestly excessive, it is not consistent with the Commonwealth's interest in protecting the public, it is not necessary to address "the nature and circumstances of the crime" considering Appellant's lack of prior record, it fails to consider mitigating factors, and Appellant asserted that the sentences for aggravated assault should not be consecutive due to Appellant's lack of opportunity for "cool reflection." This court denied Appellant's post sentence motion on January 21, 2022.

Trial Ct. Op., 4/25/22, at 2-4 (record citations omitted).

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

---

[2] 18 Pa.C.S. §§ 901(a), 2702(a)(1), 2701.1(a), and 2705, respectively.

[3] With respect to the convictions for aggravated assault, the trial court imposed consecutive terms of five to ten years' incarceration for counts seven through ten and four to ten years' incarceration for count eleven. Appellant's convictions for attempted voluntary manslaughter merged for sentencing purposes.

The trial court also imposed concurrent terms of six months to two years' incarceration for each of the two counts of REAP and two to five years' incarceration for each count of discharging a firearm into an occupied structure.

On appeal, Appellant raises the following issues for review:

1. Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that [Appellant] committed either offense of [REAP], where the Commonwealth did not prove that [Appellant's] actions placed either inhabitant of 6 Eastbrooke Drive in danger of death or serious bodily injury?

2. Was the imposition of five consecutive sentences, for an aggregate sentence of 24 to 50 years' incarceration, manifestly excessive under the circumstances, and an abuse of the court's discretion?

Appellant's Brief at 15.

In his first claim, Appellant challenges the sufficiency of the evidence supporting his convictions for REAP. *Id.* at 26. Initially, Appellant acknowledges that two individuals were sleeping inside of 6 Eastbrooke Drive when one bullet traveled through the garage attached to the residence and two other bullets struck an exterior light post located in the front yard of the property. *Id.* at 29-30. However, Appellant argues that there was no evidence "regarding where the residents . . . were located at the time the bullets struck the light post and the garage, only that they were sleeping inside the residence." *Id.* at 30. Further, Appellant contends that "it is apparent that the residents were not in the front yard in the vicinity of the light post and they were not in the garage" and "there was no indication that the bedroom where they were sleeping was near the garage." *Id.* Therefore, Appellant concludes that "there was no evidence that there was any danger to the residents, or that either projectile could have struck them" or that the

- 4 -

bullets "came anywhere near the residents" and "thus, there is no evidence that they were in danger of death or serious bodily injury." *Id.* at 26, 30.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted).

This Court has explained:

> A person is guilty of REAP, "a misdemeanor of the second degree[,] if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."[4] 18 Pa.C.S. § 2705. To sustain a conviction for REAP, "the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability

---

[4] Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

to do so. Danger, not merely the apprehension of danger, must be created." *Commonwealth v. Hopkins*, 747 A.2d 910, 915 (Pa. Super. 2000) (internal citation omitted).

*Commonwealth v. Headley*, 242 A.3d 940, 944 (Pa. Super. 2020) (emphases added).

Additionally, this Court has stated:

This Court has held that both a handgun and a BB gun are capable of causing serious bodily injury or death. *Commonwealth v. Peer*, 684 A.2d 1077, 1081 (Pa. 1996); *Commonwealth v. Ramos*, 920 A.2d 1253, 1257 (Pa. Super. 2007). However, the mere act of discharging a firearm does not on its own constitute recklessly endangering another person. *See Commonwealth v. Kamenar*, 516 A.2d 770 (Pa. 1986) (finding evidence insufficient to support conviction where the accused fired a single gunshot away from the direction of other people, into a wooded hillside behind his home); *Commonwealth v. Smith*, 447 A.2d 282 (Pa. 1982) (finding evidence insufficient where no evidence indicated that the rifle was fired at the witness, and it was just as likely that the accused safely fired the rifle into the air). However, Discharging a firearm near another person is sufficient to support such a conviction. *Commonwealth v. Hartzell*, 988 A.2d 142 (Pa. Super. 2009).

*Commonwealth v. Shaw*, 203 A.3d 281, 284 (Pa. Super. 2019).

In *Hartzell*, the defendant was convicted of REAP after he fired a semi-automatic rifle from his property and into a creek approximately 30 yards away from a bridge on which two men were standing. *Hartzell*, 988 A.2d at 142. On appeal, the defendant argued that the Commonwealth failed to prove that the two men were placed in danger by the defendant's actions. *Id.* at 143. In rejecting the defendant's arguments, this Court explained:

Although [the defendant] may not have pointed the weapon directly at the two men, it was pointed in their general direction. Moreover, the evidence established that the water was rather

- 6 -

shallow and there were rocks in the stream. Thus, it is hardly inconceivable that a bullet fired into the stream nearby could have struck a rock or other object and deflected up and hit one of the two men. The act of merely pointing a loaded gun at another has been deemed sufficient to support a conviction for REAP, *Commonwealth v. Reynolds*, 835 A.2d 720 (Pa. Super. 2003), as has the brandishing of a loaded handgun during the commission of a crime. *Commonwealth v. Hopkins*, 747 A.2d 910 (Pa. Super. 2000). Given these two examples, it is not difficult to conclude that the actual discharging of a weapon numerous times in the vicinity of others constitutes a sufficient danger to satisfy the REAP statute.

*Id.* at 143-44.

In *Shaw*, the defendant was convicted of REAP after he fired a handgun at the ceiling of his front porch of his row home at 57th Street and Girard Avenue in Philadelphia. *Shaw*, 203 A.3d at 282. At the time of the shooting, a witness was hiding behind her vehicle approximately fifteen to thirty feet away. *Id.* On appeal, this Court concluded that the defendant's "actions recklessly endangered another person because it is possible that the shot could have ricocheted off the porch ceiling toward [the witness] as she hid behind her car, creating a risk of serious bodily harm." *Id.* at 286. In reaching that conclusion, the Court explained that the defendant "discharged his weapon into the ceiling of his porch in an urban residential area" and "[h]e was in close vicinity to both [the witness] and other people who lived in nearby row homes." *Id.* Therefore, the Court found that it was "feasible that the projectile could have struck [the witness] or another person" which "created a sufficient danger of serious bodily injury." *Id.* at 286-87.

More recently, in **Headley**, the defendant was convicted of REAP after he fired a gun through the floor of his apartment during an argument with his paramour. **Headley**, 242 A.3d at 944. The bullet traveled through the floor of the defendant's apartment and into a downstairs unit occupied by the victim. **Id.** Although the victim was unharmed, the bullet traveled within three to four feet of the victim before penetrating a wall in her apartment. **Id.** On appeal, this Court found that the defendant's "reckless conduct of firing a bullet into [the victim's] home, in her direction, and within three or four feet from where [the victim] was seated, placed [the victim] in danger of death or serious bodily injury." **Id.** (citation omitted). Further, the Court explained that the defendant "disregarded the risk of death or injury and could have seriously wounded or killed [the victim]" and "created actual danger and not merely the apprehension of danger." **Id.** Therefore, the Court concluded that there was sufficient evidence to establish REAP. **Id.**

Here, the trial court addressed Appellant's sufficiency claim as follows:

The stipulated facts establish the material element of REAP, that Appellant placed two sleeping people in danger of death or serious bodily injury. Appellant was not merely present and able to shoot a firearm into the residences at 6 Eastbrooke Drive . . . but did so without thought or regard for who may be inside. The surveillance video showed Appellant shooting his gun into the group of victims, and then the stipulated facts remove doubt regarding who shot the weapon and when.

Firing into the occupied house at 6 Eastbrooke Drive put both sleeping residents in actual danger of serious bodily injury pursuant to 18 Pa.C.S. § 2706. Appellant disregarded all risk when he discharged his weapon. He could have not only ended the lives of the six men he was trying to shoot, but he endangered all of the lives in the immediate area, more so true for the

residents at 6 Eastbrook[e] Drive. The jury agreed and made the reasonable inference that the bullet holes in the homes, which were not present before the night in question, were from the gun Appellant had shot fourteen times that same night. Appellant's claim that there was insufficient evidence to support conviction of REAP is without merit and must be denied.

Trial Ct. Op. at 10.

Following our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find no error in the trial court's conclusion. **See Palmer**, 192 A.3d at 89.

As noted by the trial court, Appellant was on a residential street when he fired fourteen rounds from an AR-15 rifle during a dispute with six other men. At trial, the parties entered a stipulation regarding the victims' testimony, which reflected that the victims were asleep inside their bedroom at 6 Eastbrooke Drive at the time of the shooting and that the bullet marks on their front light post and inside the attached garage were not present before the shooting occurred. **See** N.T. Trial, 10/25/21, at 393. From this evidence, the jury could conclude that by firing a semi-automatic weapon in the direction of the victims' residence, Appellant recklessly disregarded the risk that the bullet could have struck someone inside of 6 Eastbrooke Drive. **See Hartzell**, 988 A.2d at 142; **see Shaw**, 203 A.3d at 286; **Headley**, 242 A.3d at 944; **cf. Kamenar**, 516 A.2d at 771-72 (finding that the discharge of a handgun out of the rear window of a home into a wooded hillside did not place anyone in danger of death or serious bodily injury because the shot was not fired towards a location "where any dwelling, other structure, or any other person was

known to be located"). Further, we will not re-weigh the evidence and substitute our judgment for the fact-finder. *See Palmer*, 192 A.3d at 89. Accordingly, Appellant is not entitled to relief.

**Discretionary Aspects of Sentence**

In his final claim, Appellant argues that the trial court abused its discretion by imposing a "manifestly excessive" aggregate sentence of twenty-four-to-fifty years' incarceration. Appellant's Brief at 35. In support, Appellant argues "that the trial court focused exclusively on the seriousness of the offense, and did not seriously consider any of the mitigating factors." *Id.* at 37. Specifically, Appellant argues that the trial court "ignored the fact that [Appellant] was sexually molested by his stepbrother," and that Appellant's father instigated the incident and provided Appellant with the gun. *Id.* at 37-38. Appellant also emphasizes that he was only twenty years' old at the time of the offense, "acknowledged that he had a drug and alcohol problem, and he had begun treatment with medication for depression and anxiety since being incarcerated." *Id.* at 40. Appellant claims that "[d]espite significant mitigating circumstances, the court imposed a sentence that does not allow [him] to be eligible for parole until he is 44 years old" and "was manifestly excessive, clearly unreasonable, and an abuse of the trial court's discretion." *Id.* Therefore, Appellant requests that we vacate his judgment of sentence and remand for resentencing. *Id.*

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987,

991 (Pa. Super. 2016) (citation omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Here, the record reflects that Appellant preserved his sentencing claims in his post-sentence motion, filed a timely notice of appeal, and included the issues in his Rule 1925(b) statement. Appellant has also included a Rule 2119(f) statement in his brief. Therefore, we must consider whether Appellant has raised a substantial question for review.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Battles*, 169 A.3d

1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Grays*, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

"Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011) (citation and quotation marks omitted). This Court has also stated that "ordinarily, a claim that the sentencing court failed to consider or accord proper weight to a specific sentencing factor *does not* raise a substantial question." *Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa. Super. 2015) (emphasis in original).

However, "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*). Further, this Court has held that an appellant's "challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs

and mitigating factors upon fashioning its sentence, presents a substantial question." **Swope**, 123 A.3d at 340.

Here, in his Rule 2119(f) statement, Appellant argues that his "cumulative sentence of 24 to 50 years [of] incarceration was clearly unreasonable, and so manifestly excessive as to constitute an abuse of discretion." Appellant's Brief at 23. He also argues that his mitigating circumstances "were not adequately considered, or considered at all, by the court in imposing sentence." **Id.** at 24. Therefore, we conclude that Appellant has raised a substantial question for our review. **See Swope**, 123 A.3d at 340. Accordingly, we will review the merits of Appellant's underlying claim.

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted). Additionally, "[w]e cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." **Commonwealth v. Macias**, 968 A.2d 773, 778 (Pa. Super. 2009) (citation omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of offense in relation to impact on victim and community, and

[the] rehabilitative needs of the defendant." ***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered).

"[T]he trial court is required to consider the particular circumstances of the offense and the character of the defendant," including the defendant's "prior criminal record, age, personal characteristics, and potential for rehabilitation." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citations omitted). This Court has held that "where the sentencing judge had the benefit of a [PSI report], it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Id.*** (citation omitted). This Court may only disturb a standard range sentence if we find that the circumstances of the case rendered the application of the guidelines "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).

It is well settled that "Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013) (citation omitted). Further, this Court has explained that "defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence." ***Commonwealth v. Foust***, 180 A.3d 416, 434 (Pa. Super. 2018).

Here, the trial court addressed Appellant's sentencing claim as follows:

In the present case, the court relied on all information contained in the [PSI] report before imposing sentence, including Appellant's character, family history, and rehabilitative needs. Thus,

pursuant to [***Commonwealth v. Fowler***, 893 A.2d 758, 767 (Pa. Super. 2006)], there is a presumption that the court was aware of all relevant information regarding Appellant's character and weighed those considerations before imposing sentence. The court considered the arguments of counsel and comments of Appellant, the victims, and police, the penalties authorized by the Pennsylvania legislature, as well the Pennsylvania sentencing guidelines.

Specifically, the court considered Appellant's family history and history of substance abuse. Appellant reported he began smoking marijuana at age 14 and continued until his recent incarceration, first consumed alcohol at age 13, drank every day at age 18 until his current incarceration, and experienced multiple blackouts. A drug and alcohol evaluation was performed on November 12, 2021, which states that Appellant accepts he may have a substance abuse disorder. The sentencing court asserted that Appellant is a very high risk of relapsing into alcohol and drug abuse and into anti-social and/or criminal behaviors after he is released from jail. As such, Appellant was recommended to attend any available drug and/or alcohol counseling programs while incarcerated.

The court considered Appellant's mental health history, where Appellant reported that he has never been officially diagnosed with any mental health diagnosis but believes he has depression and anxiety. A psychiatric evaluation conducted on November 29, 2021, states that Appellant started psychiatric medication for the first time while in prison and he has remained on the medications; at sentencing he was taking Seroquel, Zoloft, and Vistaril. However, it was noted that Appellant's ability to continue psychiatric medication and remain in mental health counseling in the community setting is unclear, and while his substance abuse needs are of primary concern, a lack of mental health treatment may lead to his relapse.

Appellant's age was considered, and he was 20 years of age when the offenses occurred, an age of sufficient maturity to understand the significance of his acts. His character and history as disclosed in the PSI, along with the opportunity of the sentencing court to observe Appellant at various court proceedings, was considered by the sentencing court. Appellant's level of education was also reviewed, noting he graduated from high school in 2019, and denies ever being diagnosed with any learning disabilities that would prevent him from understanding the difference between

- 15 -

right and wrong. While the court noted that Appellant did not have any prior criminal record, great weight was given to the nature and circumstances of the crimes, as well as the gravity of the crimes as they relate to impact on the life of the victims and on the community. Appellant initiated this confrontation by posting negative comments about another person on Snapchat, invited that person to come to his house to fight, sent the victim his address, recruited his father to get an assault rifle so they could confront the victims, went outside and waited for an extended amount of time for the victims to arrive, initiated a fist-fight with one of the victims, grabbed an assault rifle from his father, turned the safety off, and fired indiscriminately at the victims as they attempted to flee.

The court also considered the facts that none of the victims were armed, Appellant made no attempt to call the police, even though he had plenty of time to do so, and he made no attempt to retreat back into his home, even though he had an opportunity to do so. Appellant also did not fire warning shots, rather, he pointed the assault rifle directly at the victims and shot 14 rounds, moving around to get the best angle. Appellant also struck two homes with bullets, and one of the homes was occupied by two sleeping people. Significantly, the court noted Appellant's lack of accepting responsibility for his actions because Appellant initially admitted he acted on impulse and knew he should not have shot the victims, but at trial, Appellant stated he fired the gun in self-defense, which jury did not find credible.

Finally, the court considered the rehabilitative needs of Appellant and confinement that is consistent with protection of the public. For all of these reasons, the court found that a sentence of total confinement was necessary, because Appellant is an extreme danger to society and society needs to be protected. Therefore, the court imposed standard range guideline sentences on each count, with consecutive sentences for each of the five victims. The court noted that consecutive sentences were warranted based on the facts of this case, and Appellant should not be given a volume discount for shooting so many people at one time. Appellant's claim that his sentence is manifestly excessive is without merit.

Trial Ct. Op. at 13-16 (record citations omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court. *See Raven*, 97 A.3d at 1253. The record reflects that the trial court considered the PSI report, the appropriate sentencing factors, and the mitigating evidence presented at the sentencing hearing. *See Ventura*, 975 A.2d at 1135. Ultimately, the trial court concluded that an aggregate sentence of twenty-four to fifty years of incarceration was necessary in light of the circumstances of this case and the number of victims. *See* Trial Ct. Op. at 16. Under these circumstances, we have no basis upon which to conclude that the trial court's application of the guidelines was "clearly unreasonable" or that the trial court abused its discretion in structuring Appellant's sentences consecutively. *See* 42 Pa.C.S. § 9781(c)(2); *Austin*, 66 A.3d at 808; *Foust*, 180 A.3d at 434. Therefore, Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2023