J-S04036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KEVIN JAVIER BAEZ-BENITEZ | : | |
| | : | |
| Appellant | : | No. 738 EDA 2022 |

Appeal from the Judgment of Sentence Entered December 1, 2021
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0002462-2020

BEFORE:  MURRAY, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MARCH 1, 2023**

Kevin Javier Baez-Benitez (Baez-Benitez) appeals from the judgment of sentence imposed in the Court of Common Pleas of Lehigh County (trial court) pursuant to his jury conviction of firearms not to be carried without a license, terroristic threats, recklessly endangering another person (REAP) and simple assault by physical menace.[1]  He challenges the sufficiency of the evidence. We affirm.

We take the following factual background and procedural history from the trial court's April 27, 2022 opinion and our independent review of the record.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6106(a)(1), 2706(a)(1), 2705 and 2701(a)(3), respectively.

**I.**

The trial court aptly describes:

On July 2, 2020, at approximately 4:00 a.m., members of the Allentown Police responded to the vicinity of 1030 Linden Street. The initial call was a disturbance, but an additional dispatch warned that the dispatcher during a 9-1-1 call heard a shot fired. Upon the officers' arrival, a search of the parking lot revealed a bullet hole above a wheel-well of a white Toyota Camry. It was determined that a "bullet traveled through the front of the fender, hit a shock absorber, went through an inner fender and came out into the engine compartment." (N.T. Trial 10/13/21, at 113-17). Two fragments of the bullet were recovered. A further search located a 9mm shell casing approximately twenty (20) feet north of the Toyota Camry.

The Toyota Camry belonged to Jalessa Nuez, the victim in this case. Ms. Nuez … testified that earlier in the evening she went to the home of her friend, Danielle Smith, who resided with [Baez-Benitez] at 1030 West Linden Street. Ms. Nuez did not know Baez-Benitez very well, having met him only twice. Before the night of this incident, there was no ill will between [Baez-Benitez] and Ms. Nuez.

Ms. Nuez arrived at the residence, and after some stops and starts, [Baez-Benitez] drove Ms. Nuez and Ms. Smith to a local tavern named Greg's. Everyone consumed alcohol, and in the words of Ms. Nuez, "everyone was chillin', having a good time." (N.T. Trial, 10/12/21, at 78). Unfortunately, she had a kerfuffle with a female patron at the tavern, and her group was asked to leave.

The group went back to Ms. Smith's apartment, [where] [Baez-Benitez], Ms. Nuez, Ms. Smith, and a Melvin Castillo [hung out]. Ms. Smith, who was very intoxicated, began crying about [Baez-Benitez] and his cheating ways. Ms. Nuez, at some point, went outside to smoke a cigarette, and Ms. Smith followed her.

[Baez-Benitez] then began yelling out the window at Ms. Smith, and then came downstairs and continued the argument. He demanded Ms. Smith come back to the apartment, and when she declined, the argument became physical.

Ms. Nuez told [Baez-Benitez] to remove his hands from Ms. Smith, and offered Ms. Smith a place to stay until things "cooled down." [Baez-Benitez] responded that Ms. Smith was "not going anywhere." Ms. Nuez then went upstairs to grab her purse and keys, and as she was leaving … [Baez-Benitez] … put the gun in her face. (*See* N.T. Trial, 10/12/21, at 86). She then called 9-1-1.

The 9-1-1 call reveals that Ms. Nuez told the 9-1-1 dispatcher that she was being threatened, and that "he's gonna blow my head off …." (Exhibit 9A, Transcript of 911 Call). [Baez-Benitez] is heard saying, "Oh, I'll hurt you now that's what I do, I'll hurt you, that's what I do, that's what I do I hurt people." (*Id.*). The 9-1-1 dispatcher also learned from Ms. Nuez that "Kevin" fired a "shotgun" at her. Something was lost in the translation, because it was clarified that [Baez-Benitez] shot a gun, not a shotgun. Ms. Nuez, during her testimony, described a handgun. "It's a gun that a police officer holds," approximately seven or eight inches in length. (N.T. Trial, 10/12/21, at 86-87, 102, 143-44).

Ms. Nuez made her way out of the apartment building, and while still on the phone with the 9-1-1 dispatcher, a gunshot is heard. The shot was fired as Ms. Nuez was headed towards her vehicle. "As I was walking across the street, he shot fire.... He was on the opposite side of my car" when he discharged the firearm. (*Id.* at 97-98, 118-19). She was unsure if [Baez-Benitez] was pointing the firearm at her or her vehicle.

A video corroborating Ms. Nuez's testimony was retrieved from a video camera that was attached to the south wall of a vacant building. The video depicts an individual, identified as [Baez-Benitez], firing the firearm, and Ms. Nuez is seen in close proximity to that event.

Baez-Benitez, after discharging the firearm, fled in his vehicle, but later returned to the apartment building while the police were present. He told the officers that Danielle Smith had called him, and then departed the building. He did not identify himself to the officers, and the officers, who were still sorting out the incident, did not ask him for identification. The investigation later pinpointed [Baez-Benitez], and he was arrested in Reading.

(Trial Court Opinion, 4/27/22, at 4-7) (footnotes omitted; record citations added).

On October 14, 2021, a jury convicted Baez-Benitez of the foregoing charges. The trial court ordered the preparation of a presentence investigation (PSI) report and held a sentencing hearing on December 1, 2021, at which it sentenced him to a term of incarceration of not less than forty-two nor more than eighty-four months on the firearms charge, with all other sentences[2] to run concurrently. Baez-Benitez filed post-sentence motions that the trial court denied. He timely appealed and filed a court-ordered statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b).[3]

_____

[2] Specifically, the court sentenced [Baez-Benitez] to terms of not less than eighteen nor more than thirty-six months for terroristic threats, not less than twelve nor more than twenty-four months for REAP, and not less than twelve nor more than twenty-four months for simple assault.

[3] The trial court observes that Baez-Benitez's sufficiency claims are waived because his Rule 1925(b) statement contains boilerplate allegations of insufficiency that lack specificity. (*See* Trial Ct. Op., at 7). It is well-settled that, "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Pa.R.A.P. 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient[,]" and an appellant's failure to do results in waiver. *Commonwealth v. Ellison*, 213 A.3d 312, 320-21 (Pa. Super. 2019) (brackets and citations omitted). Baez-Benitez's Rule 1925(b) statement fails to identify the element or elements upon which he alleges the evidence is insufficient and merely states that "the evidence was insufficient as a matter of law to sustain the verdict of guilty" on each charge. (Rule 1925(b) Statement, at 1). Therefore, we deem his claims waived. Moreover, as explained above, they do not merit relief.

On appeal, Baez-Benitez complains that the evidence was insufficient[4] to support his conviction of firearms not to be carried without a license, terroristic threats, REAP or simple assault.[5]

---

[4] Our standard of review of this matter is well-settled:

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

**Commonwealth v. Vogelsong**, 90 A.3d 717, 719 (Pa. Super. 2014) (citations and quotation marks omitted).

[5] The Commonwealth argues that Baez-Benitez's arguments challenge Ms. Nuez's credibility and the weight that was afforded to her testimony, which is not a proper sufficiency argument. (**See** Commonwealth's Brief, at 7-9). While we agree with the Commonwealth's observation, because we can clearly interpret his claims, we will review them under the proper sufficiency standard, but decline Baez-Benitez's invitation to re-weigh the evidence. **See Vogelsong**, 90 A.3d at 719 ("As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record.") (citation omitted); **Commonwealth v. Betz**, 664 A.2d 600, 604 (Pa. Super. 1995) (sufficiency analysis does not permit re-examination of the credibility, reliability or weight of the evidence).

## II.

## A.

Baez-Benitez argues that the evidence was insufficient to convict him of firearms not to be carried without a license because it failed to establish that he possessed a firearm since Ms. Nuez was intoxicated[6] and unable to see clearly on the night in question and she provided multiple accounts of the night's events. (*See* Baez-Benitez's Brief, at 14-15).

Section 6106 of the Crimes Code provides, in pertinent part:

[A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

_____

[6] The trial court notes that Baez-Benitez "overstates [Ms. Nuez]'s level of intoxication" in an attempt to discredit her. (Trial Ct. Op., at 10). Not only does his claim challenge the weight of Ms. Nuez's testimony, our review of the record supports this observation. As the trial court observes:

[Baez-Benitez]'s theory of misidentification is far-fetched. If Ms. Nuez, who was familiar with [him], was incorrect in her identification, then some gun-toting stranger threatened her, and for some unknown reason engaged in target practice with her vehicle. All of the events, which were corroborated, unfolded before her eyes. Her intoxication did not affect her identification of [Baez-Benitez.] …

(*Id.* at 11).

18 Pa.C.S. § 6106(a)(1).[7] "In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. Super. 2018) (citation omitted). "A victim's in-court testimony, identifying the defendant as the perpetrator of a crime, is by itself sufficient to establish the identity element of that crime." *Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa. Super. 2018) (citations omitted). In fact, "[d]irect evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence." *Smyser*, 195 A.3d at 915 (citation omitted).

Ms. Nuez and Baez-Benitez were acquainted prior to the night of the incident. Ms. Nuez testified that she, Baez-Benitez and Ms. Smith returned to Ms. Smith's apartment after being out at a bar and that Ms. Smith and Baez-Benitez began arguing. When Ms. Nuez and Ms. Smith went outside, Baez-Benitez put his hands on Ms. Smith and Ms. Nuez told her she could stay with her, and Baez-Benitez said, "[s]he's not going anywhere." (N.T., 10/12/21, at 85); (*see id.* at 84). Ms. Nuez went back inside to get her belongings and, as she is walking down the stairs of the building, she heard Ms. Smith scream and running footsteps behind her. (*See id.* at 85-86). When Ms. Nuez turned,

---

[7] It is undisputed that Baez-Benitez was not licensed to carry a concealed firearm. (*See* Baez-Benitez's Brief, at 14).

she saw Baez-Benitez with the gun in his hand, which he pointed at her face. (***See id.*** at 86).

Ms. Nuez called 9-1-1 and told the dispatcher that Baez-Benitez was going to "blow [her] head off." (Exhibit 9A, Transcript of 9-1-1 call). Baez-Benitez could be heard in the background saying, "Oh, I'll hurt you now that's what I do … that's what I do I hurt people." (***Id.***). Ms. Nuez left the building while still on the telephone with the dispatcher, she said, "he shot fire … He was on the opposite side of my car" when he discharged the gun. (N.T. Volume I, at 97-98, 118-19).

Ms. Nuez testified that she is familiar with guns and that the one in Baez-Benitez's hand was a 9mm handgun like the ones that police officers carry. (***See id.*** at 86-87). A video attached to the wall of a building showed an individual, identified as Baez-Benitez, firing the gun near Ms. Nuez. (***Id.*** at 111-12).

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, it was more than sufficient to establish that Baez-Benitez unlawfully possessed a firearm. ***See Vogelsong***, 90 A.3d at 719; 18 Pa.C.S. § 6106(a)(1).

**B.**

Baez-Benitez argues that his conviction for terroristic threats arose out of his pointing a gun in Ms. Nuez's face and, because there was no additional

evidence of an action or threat, the evidence was insufficient. (**See** Baez-Benitez's Brief, at 15-16).

Section 2706 of the Crimes Code provides, in pertinent part that, "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to[] commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S. § 2706(a)(1). "Accordingly, the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." ***Commonwealth v. McCalman***, 795 A.2d 412, 418 (Pa. Super. 2002), *appeal denied*, 812 A.2d 1228 (Pa. 2002) (citation omitted). "[I]t is unnecessary for the defendant to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." ***In re Maloney***, 636 A.2d 671, 675-76 (Pa. Super. 1994) (citation and brackets omitted).

Baez-Benitez argues that in ***McCalman***, the court found that the evidence was sufficient to support a charge of terroristic threats because the defendant pointed a gun in the faces of the victims and said, "go the f— away" to one of them, but that there was no evidence of an action or threat in this case. (**See** Baez-Benitez's Brief, at 15-16). This argument is not supported by the record.

Ms. Nuez testified that Baez-Benitez pointed a gun in her face and when she called 9-1-1, she told the dispatcher that she was being threatened and that "he's gonna blow my head off." (Exhibit 9A, Transcript of 9-1-1 Call). In the background, Baez-Benitez could be heard saying, "Oh, I'll hurt you now that's what I do … that's what I do I hurt people." (**Id.**).

This evidence was sufficient to establish that Baez-Benitez threatened to commit a crime of violence with the intent to terrorize another. **See McCalman**, 795 A.2d at 418; **In re Maloney**, 636 A.2d at 67-76; 18 Pa.C.S. § 2706(a)(1).

## C.

Next, Baez-Benitez argues that the evidence was insufficient to prove the charge of REAP for shooting at the vehicle because "the undisputed evidence at trial established that [the] car was shot while no one was standing near it[,] [and t]herefore … [he] did not create an actual present ability to inflict harm to another person." (Baez-Benitez's Brief, at 17).

"A person commits [REAP,] a misdemeanor of the second degree[,] if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. The Crimes Code defines "serious bodily injury" as "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. REAP "requires the creation of danger, so the

Commonwealth must prove the existence of an actual present ability to inflict harm to another." ***Commonwealth v. Shaw***, 203 A.3d 281, 284 (Pa. Super. 2019), *appeal denied*, 215 A.3d 964 (Pa. 2019) (citation omitted).  Although, "the mere act of discharging a firearm does not on its own constitute recklessly endangering another person[,]" a defendant's shooting a handgun into the porch ceiling with a witness "mere feet away" is sufficient to support REAP. ***Id.*** at 284, 286 (citation omitted).

Baez-Benitez pointed a loaded gun at Ms. Nuez's face.  She testified that when she approached her car on the driver's side of the vehicle, he fired a shot from the passenger side.  (N.T. Trial Volume I, at 97-98, 118-19).  Video from a camera on a nearby building depicted an individual identified as Baez-Benitez shooting a gun with Ms. Nuez in close proximity.  (N.T. Trial, Volume I, at 111-12); (N.T. Trial Volume II, at 136-41).

The foregoing evidence was sufficient to support Baez-Benitez's conviction of REAP where it established that he recklessly engaged in conduct that put Ms. Nuez in danger of death or serious bodily injury.  ***See Shaw***, 203 A.3d at 286; 18 Pa.C.S. § 2705.

**D.**

Finally, Baez-Benitez challenges the sufficiency of the evidence to support his simple assault conviction.  He maintains that the evidence was insufficient because "there was no one else in the parking lot" and "Ms. Nuez

was clearly not fearful of imminent serious bodily injury." (Baez-Benitez's Brief, at 17-18).

To prove simple assault by physical menace, the Commonwealth must provide sufficient evidence that the accused "intentionally plac[ed] another in fear of imminent serious bodily injury through the use of menacing or frightening activity." *Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa. Super. 2003) (citation omitted); *see* 18 Pa.C.S. § 2701(a)(3) ("[A] person is guilty of [simple] assault if he … attempts by physical menace to put another in fear of imminent serious bodily injury[.]"). "Intent can be proven by circumstantial evidence and may be inferred from the defendant's conduct under the circumstances." *Reynolds*, 835 A.2d at 726 (citation omitted). "[T]he act of pointing a gun at another person [can] constitute simple assault as an attempt by physical menace to put another in fear of imminent serious bodily injury." *Id.* (citation omitted).

As stated elsewhere in this decision, the Commonwealth presented evidence that Baez-Benitez pointed a gun in Ms. Nuez's face. He threatened her that he was going to hurt her because that is what he does, he hurts people. Later, he shot the gun in her vicinity. This evidence was sufficient to prove that Baez-Benitez intentionally placed Ms. Nuez in fear of imminent serious bodily injury through the use of menacing or frightening activity. *See id.*; 18 Pa.C.S. § 2701(a)(3). Baez-Benitez is due no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/01/2023