J-S10012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COLBY QUINN MUMMAW | : | |
| | : | |
| Appellant | : | No. 335 MDA 2024 |

Appeal from the Judgment of Sentence Entered September 28, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0003396-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COLBY QUINN MUMMAW | : | |
| | : | |
| Appellant | : | No. 365 MDA 2024 |

Appeal from the Judgment of Sentence Entered September 28, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0003397-2022

BEFORE: BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.: **FILED: APRIL 11, 2025**

Colby Quinn Mummaw appeals from the aggregate sentence of ten to twenty years in prison stemming from his two convictions for robbery. We affirm.

The above-captioned cases were filed after Appellant robbed two separate Turkey Hill convenience stores in Lancaster County. The trial court summarized the factual background of this matter thusly:

On June 20, 2022, at approximately 11:01 p.m., the Ephrata Police Department responded to a robbery at a Turkey Hill store located at 903 South State Street, Ephrata, Pennsylvania . . . . From . . . Turkey Hill employee Leah Horst's ("Horst") statement, police were able to ascertain that the perpetrator was a man approximately five feet seven inches to five feet ten inches tall, pointing a black and silver pistol and wearing a neon green knit hat, a grey camo neck gaiter covering his face, sunglasses, black gloves, a maroon sweatshirt, dark pants, black shoes, a black backpack with reflective material on the shoulder straps and a red emblem on his back, and a smaller grey backpack on his front. The perpetrator ordered Horst to lock the front doors, and had her walk to the office where she was commanded to lay down wherein her hands were zip-tied behind her back. Thereafter, the perpetrator walked Horst to the cashier's station where the safe was located and Horst verbally provided the information necessary to open the safe and once opened, the perpetrator removed $391.00, and left through the side door located in the office. [Horst was able to contact her boyfriend, who came to the store through the back and removed the zip ties. She then called the police and gave a statement upon their arrival.]

. . . .

On July 21, 2022, the Ephrata Police Department was dispatched to the Turkey Hill store located at 3585 Rothsville Road, Ephrata, for an armed robbery that had just occurred. At approximately 4:20 a.m. the perpetrator pointed a black and silver pistol at . . . employee Douglas Faulk ("Faulk") and said, "Give me your money." Faulk believed the gun to be fake[, asked if the robbery was a joke,] and began walking toward the man when the perpetrator shot him three times in the torso [with either BB's or pellets] and then ran out of the Turkey Hill towards James Avenue. The perpetrator was described as a white man, [five] feet eight inches tall, wearing a grey and white tweed long sleeve shirt, dark pants, a dark green knitted hat, black shoes, black gloves, sunglasses, a neon green gaiter, and he was carrying a red drawstring bag with white lettering on it. Police were able to recover a BB and a pellet on the floor which they determined were shot out of an air gun or a CO2 gun. Shortly thereafter, at 4:36 a.m.[, an officer] observed . . . Appellant . . . [one-third of a mile] away, parked in his 2005 white Ford Expedition in a Wawa store parking lot located at 602 South Reading Road . . . [The officer spoke with Appellant and was aware that he was a person of

suspicion as to the June robbery. However, the officer did not observe in plain view any items related to the robbery that had just occurred in Appellant's vehicle. Appellant therefore was not apprehended at that time]. During their investigation, police viewed surveillance footage from the Wawa store that showed Appellant's white Ford Expedition traveling on Niss Avenue away from the Turkey Hill before turning into the Wawa parking lot. Police were able to locate video from a business across the street from the Turkey Hill that showed Appellant's vehicle traveling east at 4:28 a.m. and turning left onto James Avenue, and police were also able to obtain video footage from 1010 James Avenue, a private residence, which captured Appellant's vehicle traveling past the home, away from the Turkey Hill, towards the Wawa.

Trial Court Opinion, 5/10/24, at 1-4 (internal citations omitted).

On July 20, the day before the second robbery, Agent Jay Williams of the Pennsylvania Board of Probation and Parole ("PBPP") was assigned a new list of persons to supervise, which included Appellant. Agent Williams contacted Appellant to schedule a home visit so that the agent could introduce himself. Appellant responded via text message that he would be free on July 22. Later in the morning of the 20th, Agent Williams received a call from Detective Quinn[1] of the Ephrata Police Department. The detective informed Agent Williams that Appellant was suspected in several local burglaries, including the June incident at Turkey Hill, though he did not give substantial detail into the events at that time. Agent Williams told Detective Quinn that he was going to be visiting Appellant's house on the 22nd, and there was no discussion of police participation at that time.

_____

[1] Detective Quinn's first name is not contained within the record.

On the morning of July 22, while Agent Williams was performing home visits of other individuals whom he supervised, he received text messages from Detective Brandon Bartholomew of the Ephrata Police Department. The detective stated that Appellant's brother had informed law enforcement that Appellant was keeping a firearm in his living room and that he had recently gone to Philadelphia to procure fentanyl. Based on this information, and fearing officer safety, Agent Williams contacted his supervisor, Christopher McGrath, and sought the support of additional PBPP agents for the home visit that day. Supervising Agent McGrath also authorized a limited search of Appellant's residence for the purported weapons and fentanyl.

Shortly before the home visit at Appellant's residence, Agents Williams and McGrath met with officers from the Ephrata Police Department at a nearby Wawa store. The officers decided that they would not be involved in the search, but that they would remain in the vicinity to provide assistance if required. The agents then made contact with Appellant at his house and detained him. Upon being asked if he would pass a drug test, Appellant admitted that he had smoked marijuana the day before, which constitutes a violation of the conditions of his supervision. After the agents placed Appellant in handcuffs for their safety, they began a search of the residence, discovering in the living room a $CO_2$-operated firearm and a shoebox containing a powdery substance. The agents immediately ceased the search upon observing these items and contacted law enforcement. They then placed Appellant under arrest and transported him to the local jail for his parole violations.

After being notified of the PBPP agents finding the shoebox and firearm, Detective Bartholomew of the Ephrata Police Department obtained a search warrant for Appellant's residence relating to drugs and drug paraphernalia. Officers conducted a search pursuant to the warrant, wherein they discovered a scale with residue on it, various needles, glass bongs, and 106 baggies of fentanyl. They further discovered a backpack, which appeared to contain evidence of the Turkey Hill robberies. Accordingly, another detective with the department obtained a second search warrant for evidence relating to the robberies. In the backpack, they discovered a number of items of evidentiary value, including another $CO_2$-operated handgun, a drawstring bag, and various items worn by the perpetrator of the two robberies. Additionally, in Appellant's vehicle parked in the garage, they found a package of heavy-duty zip ties matching the brand that was used to restrain Horst.

Based on the above, and pertinent here, Appellant was charged with multiple offenses at two separate dockets, limited to his involvement in the two Turkey Hill incidents. Appellant filed an omnibus pretrial motion to suppress the evidence seized from his residence, alleging that the search warrants were invalid because they relied on the improper initial warrantless search conducted by the PBPP agents. The trial court denied the motion following a hearing. The Commonwealth later amended the criminal information in each case so that Appellant faced solely one robbery count in each matter.

Appellant proceeded to a consolidated jury trial, wherein both Horst and Faulk testified. They could not identify Appellant as the perpetrator because on each occasion the gunman was fully masked. They nonetheless both stated that they believed the perpetrator was a white male based on his voice, build, and small portions of his skin that were visible. At its conclusion, the jury convicted Appellant of both robbery counts. The court thereafter sentenced him to a consecutive five to ten years of incarceration on each conviction. Appellant timely appealed each case following the filing of post-sentence motions.[2] Both Appellant and the trial court complied with the strictures of Pa.R.A.P. 1925. We consolidated the matters *sua sponte*.

Appellant presents two issues for our review, which we have reordered for ease of disposition:

1. Did the court err in finding sufficient evidence to [*sic*] for convictions on robberies where no identifications were made and one offense did not meet the elements of the offense?

2. Did the suppression court err in denying suppression of illegally seized evidence after warrantless parole search, illegal warrants, rendering all evidence fruit of the poisonous tree?

Appellant's brief at 6 (some capitalization altered).

_____

[2] The appeals were filed prior to entry of any order denying the post-sentence motions. Accordingly, this Court issued a rule for Appellant to show cause why the matters should not be dismissed as premature, and which directed him to praecipe the trial court for entry of an order since more than 120 days had elapsed with no decision on the motions. Counsel timely submitted a praecipe, and the clerk's office entered an order denying the motions by operation of law pursuant to Pa.R.Crim.P. 720. Accordingly, this appeal is properly before us.

- 6 -

In his first claim, Appellant challenges the sufficiency of the evidence supporting his robbery convictions. We consider Appellant's position mindful of the following well-settled standard of review:

> When reviewing a [sufficiency] claim, we face a question of law. Accordingly, our standard of review is *de novo*. We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, we may not weigh the evidence and substitute our judgment for the factfinder. Any doubts regarding a defendant's guilt may be resolved by the factfinder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Roberts***, 293 A.3d 1221, 1223 (Pa.Super. 2023) (cleaned up). Further, "when considering the sufficiency of the evidence, we must consider both properly and improperly admitted evidence." ***Commonwealth v. Edwards***, 177 A.3d 963, 970 n.13 (Pa.Super. 2018) (citation omitted).

The two convictions in question were for robbery, defined as follows:

(1) A person is guilty of robbery if, in the course of committing a theft, he:

> . . . .

> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S. § 3701(a)(1)(ii).

Appellant mounts a two-pronged attack against his convictions. First, he avers that his identity was never proven because neither of the Turkey Hill employees involved in the incidents could recognize him as the assailant, and the suspect was not apprehended immediately after either robbery. *See* Appellant's brief at 18-19. Second, he contends that the conviction arising from the July incident cannot stand because employee Faulk was not placed in fear. *Id*. at 20. Appellant avers that this was evidenced by the fact that Faulk asked the suspect if the robbery was a joke and continued to walk toward him despite being shot in the torso with several BB's and pellets. *Id*. at 19-20.

In addressing the first aspect of this issue, the trial court noted that there was substantial circumstantial evidence linking Appellant to the crimes. Beyond the similar description of the assailant given by Horst and Faulk, the court highlighted that a litany of incriminating items were retrieved from either Appellant's house or his vehicle, including the following: a backpack, two drawstring bags, two lime green neck gaiters, Chopper brand sunglasses, black gloves, an olive green beanie, a revolver-style BB/pellet gun, zip ties, and $CO_2$ air cartridges and pellets for the firearm. *See* Trial Court Opinion, 5/10/24, at 12. The court also recounted that Appellant was near the scene of the second robbery based on the encounter with an officer at a Wawa store only one-third of a mile away, as well as the surveillance footage from several sources showing Appellant's vehicle traveling from an area near the Turkey Hill to the Wawa during that time. *Id*. at 13. It therefore concluded that

"[w]hen viewed in the light most favorable to the Commonwealth, the circumstantial evidence overwhelmingly points to Appellant as the perpetrator of the two Turkey Hill robberies." *Id*.

For its part, the Commonwealth adds that it met its burden of proving that Appellant threatened each clerk with immediate serious bodily injury during each robbery. *See* Commonwealth's brief at 25. It notes that "[r]obbery does not exclusively require that the victim be placed in fear of immediate serious bodily injury – the threat to do so is sufficient." *Id*. (citing *Commonwealth v. Thomas*, 546 A.2d 116 (Pa.Super. 1998)). The Commonwealth also maintains that a BB gun is a weapon "capable of producing death or serious bodily injury[.]" *Id*. at 26.

Upon review, we agree with the trial court and the Commonwealth that Appellant's convictions were supported by sufficient evidence. Although circumstantial, there was abundant evidence connecting Appellant to the crimes, as shown by the multitude of items obtained from Appellant's residence and vehicle one day after the second robbery. This includes the clothing worn by Appellant during each encounter and the weapon used. Appellant's connection to the crimes was further supported by the testimony of the clerks at trial and the video surveillance evidence.

Additionally, we find that even if Appellant did not actually place Faulk in fear of imminent serious bodily injury, that is not fatal to his conviction. The testimony established that Appellant nevertheless threatened Faulk with serious bodily injury by pointing a BB gun at him and shooting him with it.

- 9 -

*See*, *e.g.*, *Commonwealth v. Shaw*, 203 A.3d 281, 284 (Pa.Super. 2019) ("This Court has held that both a handgun and a BB gun are capable of causing serious bodily injury or death."). Accordingly, the jury was within its rights to conclude that Appellant satisfied all the elements of robbery. No relief is due.

Appellant next contends that the trial court erred in denying his motion to suppress. In that vein, we have stated:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Davis*, 241 A.3d 1160, 1171 (Pa.Super. 2020) (citation omitted).

Our law has recognized that "probationers and parolees have limited Fourth Amendment rights because of a diminished expectation of privacy." *Commonwealth v. Rosendary*, 313 A.3d 236, 241 (Pa.Super. 2024) (citation omitted). We have further summarized:

> [S]tate parole agents' authority and duties with respect to parolees are prescribed by two sections of the Prisons and Parole Code. Section 61[81] declares agents to be peace officers and provides them with police power to arrest without warrant any parolee under supervision for violating parole conditions. Section 61[82] deems parole agents to be in a "supervisory relationship with their offenders," aimed at assisting parolees in rehabilitation

and reassimilation and protecting the public. This section further outlines the procedures and requirements for agents to search the person and property of offenders and provides that such searches must comport with the protections of the United States and Pennsylvania Constitutions. Another provision prevents the exclusion of evidence from parole or criminal proceedings based solely on a violation of the statute.

*Id*. at 242 (cleaned up). Pursuant to the relevant statute, "[a] property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the department-supervised offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S. § 6182(d)(2). Despite this authority, agents "may not act as 'stalking horses' for the police," who are subject to higher suspicion standards before performing searches. *See Commonwealth v. Mathis*, 173 A.3d 699, 706 (Pa. 2017).

Appellant argues that the search warrants were invalid since they stemmed from an illegal parole search by the PBPP agents. *See* Appellant's brief at 15. He highlights that before the agents came for the home visit, they were contacted by Ephrata police and specifically advised that law enforcement was investigating Appellant for several robberies. *Id*. Appellant contends that based on this information, "[s]tate parole switched hats with law enforcement," and that "[b]ecause neither clerk from the Turkey Hill robberies [was able to] positively identify Appellant, the Commonwealth's case was built on this series of illegal searches." *Id*. at 16.

In its Rule 1925(a) opinion, the trial court thoroughly and cogently analyzed this issue, first detailing the facts recounted above surrounding the PBPP's detention of Appellant. Afterward, the court opined:

> In [Appellant]'s case, Agent Williams knew before arriving that he would be conducting a search for a firearm for officer safety when he got to Appellant's home, based on his reasonable suspicion that Appellant had a weapon in his home. Agent Williams obtained permission to search Appellant's home for weapons from his supervisor, Agent McGrath. In obtaining that permission, Agent McGrath determined there was reasonable suspicion to believe Appellant possessed a weapon based on the information from police relayed to him by Agent Williams, and obtained from a reliable source, Appellant's brother.
>
> Moreover, the second drugs were located, the search was stopped and a search warrant was obtained, and a second search warrant was obtained by police for items relating to the robberies. At no time did Agents Williams and McGrath participate in the searches for drugs and robbery items as they had left the scene with the Appellant to charge him with the violation of . . . his [parole]. The [parole] officers did not "switch hats" and act as police officers, they had reasonable suspicion that Appellant may be armed, and as such, the initial search was properly conducted. The court did not err in denying Appellant's suppression motion; the issue is without merit and denied.

Trial Court Opinion, 5/10/24, at 23 (internal citations omitted).

The court's factual findings are supported by the record and its legal conclusions drawn from those facts are correct. *See Davis*, 241 A.3d at 1171. The PBPP agents plainly had reasonable suspicion that there would be "contraband or other evidence of violations of the conditions of supervision" in Appellant's residence, based on the information provided by Appellant's brother and law enforcement. *See* 61 Pa.C.S. § 6182(d)(2). The initial search for those items was thus proper.

- 12 -

Furthermore, Appellant has not convinced us that the agents were acting as stalking horses on behalf of the local police, despite the fact that agents and officers were in communication prior to the search. The record confirms that Agent Williams scheduled a home visit at Appellant's residence for July 22, 2022, prior to any contact from police. Although his original intent was to meet Appellant at his home, he gained approval from his supervisor to first perform a limited search for weapons and fentanyl for the safety of himself and other agents on scene. Once those were discovered, the search was discontinued and Appellant was transported to the jail. The Ephrata Police Department took complete control over the investigation and then obtained two additional warrants, conducting the searches that revealed evidence linking Appellant to the robberies. There was no evidence that the PBPP agents had any involvement in the subsequent searches or that their intent was to discover evidence relating to the robberies. In short, the court did not err in denying Appellant's request to suppress.

For the reasons above, we have no cause to disturb Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/11/2025